UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES B. GILL, SR.,

                     Plaintiff,

    v.                                         Case No. 23-cv-256-pp

AUTUMN MEYER, LIZA NAUMANN,
JOSEPH TEIGEN, TRACEY KIEYA,
JENNIFER SCHUBART, RYAN BRAUN,
ALEX JOHNSON, DANIEL RUNNING,
CAPT. SCHMIDT, LT. WILLSON
and LT. BEAUVIAS,

                     Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A**

      Charles B. Gill, Sr., who is incarcerated at Stanley Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. On March 13, 2023, the court received the plaintiff's amended complaint. Dkt. No. 10. Because the court had not yet screened the original complaint when it received the amended complaint, this decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens the amended complaint, dkt. no. 10.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without

prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On March 10, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $11.40. Dkt. No. 9. The court received that fee on March 27, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Amended Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.    The Plaintiff's Allegations

The amended complaint names as defendants Autumn Meyer, Liza Naumann, Joseph Teigen, Tracey Kieya, Jennifer Schubart, Daniel Running, Alex Johnson, Captain Schmidt, Lieutenants Willson and Beauvias and Ryan Braun. Dkt. No. 10 at 1–3. The amended complaint alleges that defendant Teigen works for the Grand Chute Police Department; defendant Kieya works for the Rodeway Inn Motel in Grand Chute; defendants Schubart and Braun work for the Wisconsin Department of Corrections (DOC); defendants Running and Johnson work for the Outagamie County District Attorney's Office; and defendants Schmidt, Willson and Beauvias work for the Outagamie County Sheriff's Department. Id. The amended complaint sues the defendants in their individual and official capacities. Id. at 3.

The plaintiff alleges that on December 28, 2022, Naumann falsely told probation agent Schubart that the plaintiff had sexually assaulted her and that he had guns and drugs in Room 248 at the Rodeway Inn Hotel. Id. at 3. The plaintiff alleges that Schubart falsely reported what Naumann had told her in an effort to have him arrested and "to deprive him of his liberty in some way." Id. Schubart allegedly told Sergeant Teigen that "her client had disclosed allegations of sexual assault" by the plaintiff, and that the plaintiff's room 248 at the Rodeway Inn Hotel contained drugs and guns "possibly." Id. at 3–4. At about 1:30 p.m., Teigen and Lieutenant Blahnik (who is not a defendant) arrived at the Rodeway Inn and saw the plaintiff enter room 252 (not room 248). Id. at 4. The plaintiff later exited room 252, approached both officers and, in response to being asked who he was, identified himself. Id. The officers "grabbed" the plaintiff and detained him. Id. The officers handcuffed and searched the plaintiff but did not find anything on his person, and Officer Tucker (also not a defendant) took the plaintiff to the Outagamie County Jail. Id. Sergeant Teigen searched hotel rooms 203 and 248. Id. He found defendant Meyer and her two cats in room 248, and Meyer later claimed (the plaintiff says falsely) that the plaintiff had been in room 248 "for about a month" and had sexually assaulted her. Id. at 4–5. She also told Teigen that she witnessed the plaintiff "smoke crack." Id. at 5. The plaintiff says there have been no sexual assault charges filed as of the date of the amended complaint. Id. at 5.

The plaintiff alleges that Sergeant Teigen filed false charges against him. Id. He attached a District Attorney referral form related to these charges. Dkt. No. 10-1 at 32. The plaintiff says Teigen also filed a false police report about the incident based on Meyer's claims. Dkt. No. 10 at 5. He claims that Teigen took Meyer's words "alone," discriminating against the plaintiff, who is Black,

while Tiegen and Meyers are White. Id. The plaintiff alleges that he originally was charged with resisting arrest, felony bail jumping and possession of drug paraphernalia, but that Meyer has not been charged with any offenses "even though she was found in room 248 and was banned from the hotel property" in November 2022 because of a domestic dispute she had with her boyfriend. Id. The plaintiff claims that defendant Kieya is the manager of the Rodeway Inn Hotel, and he says that she violated his rights and defamed him on December 28, 2022 when she told police "that she thought [he] was staying in room 248". Id. at 6.

On December 29, 2022, Assistant District Attorney Running filed a criminal complaint against the plaintiff. Id. The plaintiff claims that Running falsely charged the plaintiff with burglary, criminal trespass and felony bail jumping, "as well as the ones refer[r]ed by Teigen." Id. He attached a copy of the criminal complaint. Dkt. No. 10-1 at 15–18. The plaintiff appeared in court that afternoon, and Assistant District Attorney Johnson "did restate the defamatory claims against" the plaintiff, continuing to maliciously prosecute the plaintiff with what he says were false charges. Dkt. No. 10 at 6.

The plaintiff alleges that on January 11, 2023, Braun, who is a probation supervisor, "did in fact restate defamatory claims" against him when Braun filed a Notice of Violation, Recommended Action, Statement of Hearing Rights and Receipt. Id. at 6–7. The plaintiff attached the Notice. Dkt. No. 10-1 at 19–24. The plaintiff asserts that on page 2 of the notice form, Braun checked the box under "Right of Offender" that said, "You have given a signed statement admitting the violations." Id.[1] The plaintiff says the notice restates the false

---

[1] It is not clear that Braun relayed allegations or checked the box about which the plaintiff complains. The probation agent who signed the Notice was Heather Friedrich. Dkt. No. 10-1 at 19-22.

allegations that the plaintiff sexually assaulted Meyer and Naumann and possessed drug paraphernalia, and it wrongly claims that the plaintiff occupied a room at the Rodeway Inn "without permission from Rodeway Inn staff." Dkt. No. 10 at 7. He claims Braun inflicted emotional distress "and did restate defamatory claims in written form on Jan. 11, 2023." Id.

The plaintiff alleges that on January 25, 2023, after he had had read his paperwork, he noticed that Braun had checked the box indicating that the plaintiff had admitted the violations. Id. He says that he attempted to contact his attorney, "but his pin was blocked." Id. He told Lieutenant Beauvias that his PIN was blocked and that he needed to call his lawyer, but Beauvias told the plaintiff to write to the lawyer. Id. The plaintiff says he attempted to write to his attorney consistent with Outagamie County Jail procedures, but Lieutenant Beauvias ignored his request. Id. On January 25 and 26, 2023, the plaintiff spoke with Lieutenant Evans (not a defendant), who told him "there was nothing he could do at that time." Id. at 7–8. The plaintiff filed a grievance, and he later "tried to explain his situation to" Lieutenant Willson. Id. at 8. He says Willson also told the plaintiff to write to the attorney, and also ignored his request. Id. The plaintiff filed a grievance, and alleges that it was denied "on both levels." Id. He asserts that Captain Schmidt and Lieutenants Beauvias and Willson denied his rights to counsel and to free speech. Id. The plaintiff alleges that on February 2, 2023, he was transferred to the Brown County Jail even though he had a court appearance in Appleton, which is in Outagamie County. Id. He says he was transferred "after complaining about not being able to call his attorney." Id.

On the afternoon of February 3, 2023, the plaintiff appeared for a preliminary hearing in court in Appleton via Zoom from the Brown County Jail.

Id. He says that Sergeant Teigen "admitted on [the] record" that after the plaintiff told him and Lt. Blahnik that he was "helping friends" in Room 252, a Sgt. Bohlen of the Grand Chute Department (not a defendant) verified that the plaintiff was there helping "Tom and Nicole" after doing a welfare check. Id. He also alleges that Sergeant Teigen verified that after obtaining access to the plaintiff's Facebook Messenger text messages and phone messages between the plaintiff and "Breese," the message proved that the plaintiff was "taking care of Breese, Burnell, and their child." Id. at 8–9. The state court judge concluded that there was no probable cause to bind the plaintiff over for trial on the burglary and criminal trespassing charges. Id. at 9.

On March 6, 2023, the plaintiff was called to the Inmate Classification Office at Dodge Correctional Institution to see Ms. Rohrbeck (not a defendant). Id. (The plaintiff does not say when he was transferred to Dodge.) He says that because Meyer and Neumann had made false sexual assault allegations, and because Schubart, Braun and Teigen all made false allegations, the DOC forced the plaintiff to participate in a sex offender evaluation class. Id. The plaintiff alleges that he was required to "do a Shipley-2 Profile sheet, a Shipley-2 Block pattern Form, and . . . answer a brief sexual History questionnaire which violates his religious beliefs." Id. He says that he is Muslim, that sex is private in Islam and it is forbidden to speak "about sex with a woman who is not his mate/girlfriend/wife outside the privacy of his home or bedroom." Id. He says that this violated his First Amendment rights and his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the Religious Freedom Restoration Act (RFRA). Id. The plaintiff also alleges, without elaboration, that Grand Chute Police Department staff took his property. Id. at 10. In reciting his claims, he asserts a violation of "RLUITPA [sic] of 2000," by

which the court assumes he means the Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA). Id.

The plaintiff seeks declaratory relief that the defendants' "acts and omissions described here in [*sic*]" violated his constitutional rights. Id. at 11. He seeks a preliminary and permanent injunction ordering the defendants, the Grand Chute Police Department and staff at the Rodeway Inn Hotel "to stop filing false reports, and allegations" against him and to "remove the false allegations from his file." Id. He also seeks compensatory and punitive damages against each defendant. Id. at 11–12.

C.    Analysis

1.    *Individual Capacity*

The amended complaint does not state a cognizable claim against Meyer, Naumann or Kieya. Section 1983 allows a person to sue anyone who violates his constitutional rights "under color of "state law—that is, a state government official, someone who is acting under state authority. The amended complaint alleges that Meyer, Naumann and Kieya are private citizens who made allegedly false statements against the plaintiff. Even if Meyer, Naumann and Kieya made false or defamatory statements about him, the plaintiff cannot obtain relief against a private citizen under §1983. See West v. Atkins, 487 U.S. 42, 49 (1988); Spiegel v. McClintic, 916 F.3d 611, 616 (7th Cir. 2019) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999)) (explaining that "§ 1983 does not permit suits based on private conduct, 'no matter how discriminatory or wrongful'").

The plaintiff could seek relief from Meyer, Naumann or Kieya if they "acted together with or . . . obtained significant aid from state officials, or [if] [their] conduct is otherwise chargeable to the State." Lugar v. Edmondson Oil

Co., 457 U.S. 922, 937 (1982). To proceed under this so-called "conspiracy theory" of §1983 liability, the amended complaint needed to demonstrate that Meyer, Naumann or Kieya and a state official "reached an understanding to deprive the plaintiff of his constitutional rights" and that Meyer, Naumann and Kieya were "willful participants in joint activity with the State or its agents." Spiegel, 916 F.3d at 616 (quoting Fries v. Helsper, 146 F.3d 452, 457 (7th Cir. 1998) (internal quotation marks omitted)). The amended complaint does not allege that Meyer and Naumann acted together with state officials to arrest the plaintiff based on their false allegations; it alleges only that they reported to police that the plaintiff sexually assaulted them and possibly possessed drugs and/or guns. In fact, the plaintiff says he never was charged with sexual assault. The amended complaint similarly alleges that Kieya manages the Rodeway Inn Hotel, and that she told police that she believed the plaintiff was staying in room 248. Even if their statements were false, Meyer and Naumann's act of reporting a crime and Kieya's act of providing information to police do not constitute state action sufficient to state a claim under §1983. Id. at 617 (citing cases) ("[T]he mere act of filing false police reports is not actionable under § 1983."). The court will dismiss Meyer, Naumann and Kieya from this lawsuit.

The plaintiff next asserts that Teigen violated his rights by falsely arresting him, filing a false police report against him and falsely imprisoning him. The court reviews the plaintiff's claim of unlawful arrest under the Fourth Amendment. See Alexander v. McKinney, 692 F.3d 553, 558 (7th Cir. 2012). An officer has an absolute defense to a claim of unlawful arrest or detention or unreasonable seizure if there existed probable cause for the arrest or detention. See McWilliams v. City of Chicago, No. 20-1770, 2022 WL 135428, at *2 (7th

9

Cir. Jan. 14, 2022) (citing <u>Martin v. Marinez</u>, 934 F.3d 594, 598 (7th Cir. 2019)); <u>Abbott v. Sangamon County</u>, 705 F.3d 706, 713–14 (7th Cir. 2013). The amended complaint says that Schubart falsely told Sergeant Teigen that she had reports of the plaintiff sexually assaulting Naumann at the Rodeway Inn Hotel and that he possibly had guns and drugs there. That information may have provided probable cause for Sergeant Teigen to detain the plaintiff and hold him pending an investigation. But at the screening stage, the court must accept the allegations in the amended complaint as true. If true, the allegations sufficiently state a Fourth Amendment claim that Sergeant Teigen unlawfully arrested and detained the plaintiff without probable cause. The court will allow the plaintiff to proceed on this claim.

The plaintiff also claims that Teigen discriminated against him because of his race. The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary discrimination "unrelated to the character of the activity allegedly discriminated against." <u>Reed v. Faulkner</u>, 842 F.2d 960, 962 (7th Cir. 1988). To state a claim under the Equal Protection Clause, the plaintiff must show: 1) that similarly situated persons have been treated differently by the government; and 2) that there is no rational relation between the dissimilar treatment and any legitimate penal interest. <u>See</u> <u>May v. Sheahan</u>, 226 F.3d 876, 882 (7th Cir. 2000) (citing <u>Hudson v. Palmer</u>, 468 U.S. 517, 523 (1984), and <u>Williams v. Lane</u>, 851 F.2d 867, 881–82 (7th Cir. 1988)). The plaintiff's allegations do not satisfy these criteria. He says that Sergeant Teigen accepted Meyer's factual account as true instead of the plaintiff's. But the only reason he gives for why he believes this decision was discriminatory is that he is Black, and Teigen and Meyer are White. He alleges no facts to suggest that Teigen's decision was discriminatory in nature. His speculation that Teigen

discriminated against him, without any factual support, is not sufficient to state a claim under the Equal Protection Clause. The court will not allow the plaintiff to proceed on this claim.

The plaintiff alleges that Running and Johnson filed false criminal complaints against him and maliciously prosecuted him on the false charges. But prosecutors, including assistant district attorneys like Running and Johnson, are absolutely immune from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976); Davis v. Zirkelbach, 149 F.3d 614, 617 (7th Cir. 1998). Charging decisions fall under total immunity, Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993), so the plaintiff cannot proceed against Running and Johnson for their role in prosecuting the plaintiff's criminal case. See Tobey v. Chibucos, 890 F.3d 634, 650 (7th Cir. 2018) (collecting cases).

A claim of malicious prosecution also arises under the Fourth Amendment but is "entirely distinct" from a claim of false arrest; a claim of malicious prosecution seeks to remedy "detention accompanied not by absence of legal process, but by *wrongful institution* of legal process." Wallace v. Kato, 549 U.S. 384, 390 (2007) (emphasis in original). A claim of malicious prosecution is cognizable under §1983 only if there no adequate tort remedy under state law. Cannon v. Newport, 850 F.3d 303, 306 (7th Cir. 2017). But the State of Wisconsin provides a tort remedy for the plaintiff's claim. Id. (citing Strid v. Converse, 331 N.W.2d 350, 353–54 (Wis. 1983) and Julian v. Hanna, 732 F.3d 842, 845 (7th Cir. 2013)). See also Monroe v. Chase, 397 Wis. 2d 805, 961 N.W.2d 50, 53 (Wis. 2021) (listing the elements of a malicious prosecution claim under Wisconsin law). That means the plaintiff must pursue his claim of

malicious prosecution in state court and cannot proceed on that claim in this federal lawsuit. The court will dismiss defendants Running and Johnson.

The plaintiff claims that unidentified defendants from the Grand Chute Police Department unlawfully seized his property. He does not explain what property was taken. The court also analyzes this claim under the Fourth Amendment. See Ker v. California, 374 U.S. 23, 30–31 (1963). A seizure of personal property "occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" Soldal v. Cook Cty., Ill., 506 U.S. 56, 61 (1992) (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)). But like the claim of malicious prosecution, claims for deprivation of property are not actionable under §1983 if adequate state remedies are available to redress the deprivation, even if the property is taken intentionally. See Hudson v. Palmer, 468 U.S. 517, 533 (1984); Parratt v. Taylor, 451 U.S. 527 (1981), partially overruled on other grounds by Daniels v. Williams, 474 U.S. 327, 330–31 (1986); Mitchell v. Whiteleather, 248 F.3d 1158, at *1 (7th Cir. 2000) (unpublished). The State of Wisconsin "provides several post-deprivation procedures for challenging the taking of property." Cole v. Litscher, 343 F. Supp. 2d 733, 742 (W.D. Wis. 2004) (citing Wis. Const. art. I, §9; Wis. Stat. §§810 and 893). That means the plaintiff also must bring his claim for deprivation of his property in state court.

The plaintiff asserts that Braun, a probation supervisor, filed a notice of probation violation and revocation recommendation against him and that it reiterated the allegedly false sexual assault claims and indicated that the plaintiff had admitted the violations. The plaintiff also says that Braun's conduct resulted in his having to participate in a sex offender evaluation that violated his religious beliefs. But Braun is entitled to absolute immunity for

any acts he performed that are "analogous to those performed by judges." Wilson v. Kelkhoff, 86 F.3d 1438, 1445 (7th Cir. 1996) (citing Walrath v. United States, 35 F.3d 277, 283 (7th Cir. 1994)). Such acts include "decisions to grant, deny or revoke supervision, as well as activities "inexorably connected with the execution of . . . revocation procedure and are analogous to judicial action." Id. (quoting Walrath, 35 F.3d at 282).

The plaintiff provided the Notice of Violation, Recommended Action, Statement of Hearing Rights and Receipt. Dkt. No. 10-1 at 19-22. It lists the probation agent as "Heather Fredrich." Id. at 19. It is *not* signed by the plaintiff, but Heather Fredrich signed it as a witness. Id. at 20. On the last page, there is a section titled "Supervisor's Decision on Offender's Custody." Id. at 23. The box next to "The offender shall be held in custody," is marked as are the boxes next to, "The offender is believed to be dangerous," "The offender is likely to engage in criminal behavior before the revocation takes place," "The offender is likely to engage in an activity that does not comply with the rules and conditions of supervision" and "The length of the term to be served upon revocation is great." Id. Under "Supervisor Signature," the name "Braun, Ryan (BraunRM)" appears, next to the date of January 11, 2023. Id.

It appears, then, that as a probation supervisor, Braun made the decision that the plaintiff should be detained in custody until the revocation hearing. That is a decision analogous to a decision made by a judge, and Braun is entitled to absolute immunity for making that decision. The court will dismiss defendant Braun.

The plaintiff claims that Schubart reported Naumann's allegedly false accusations against the plaintiff to Teigen, who initiated the plaintiff's arrest and the allegedly false charges. The plaintiff identifies Schubart as a probation

officer, but he alleges that her act of reporting Neumann's allegations to the police violated his rights, and caused him to have to undergo the sex offender evaluation that violated his First Amendment rights. Probation officers are not entitled to absolute immunity for their actions during the evidence-collection or investigatory phase of a revocation proceeding; they are entitled only to qualified immunity for those actions. See Mays v. Johnson, 850 F. App'x 981, 982 (7th Cir. 2021) (citing Wilson v. Kelkhoff, 86 F.3d 1438, 1446 (7th Cir. 1996)). But the Seventh Circuit has held that

> Asking a probationer to adhere to conditions of probation, warning him of the consequences if he fails to do so, and filing requests for revocation are not violations of section 1983; they are the job description for the often thankless job of a probation officer.

Tobey v. Chibucos, 890 F.3d 634, 650 (7th Cir. 2018).

The court suspects that Schubert's reporting of Naumann's allegations to Teigen, while perhaps investigatory, was required by the duties of her job. But out of an abundance of caution, the court will allow the plaintiff to proceed on a Fourth Amendment claim against Schubart for passing along allegedly false information that led to the plaintiff's arrest and probation revocation.

The plaintiff next claims that Lieutenants Beauvias and Willson of the Outagamie Sheriff's Department violated his right to contact his attorney. The plaintiff says that when his PIN did not work for making phone calls, he attempted to write to his attorney instead. He says Beauvias and Willson ignored his requests. The Seventh Circuit has held that "[r]estrictions on a detainee's telephone privileges that prevented him from contacting his attorney violate the Sixth Amendment right to counsel." Murphy v. Walker, 51 F.3d 714, 718 (7th Cir. 1995) (citing Tucker v. Randall, 948 F.2d 388, 390–91 (7th Cir. 1991)). The plaintiff has not alleged that the lieutenants restricted his phone access; he says only that his PIN to make phone calls did not work. But he

*does* allege that Beauvias and Willson ignored or disregarded his requests to contact his attorney. Although these allegations are sparse, at the screening stage they are sufficient to state a violation of the plaintiff's Sixth Amendment right to counsel. The court will allow him to proceed against Lieutenants Beauvias and Willson on this claim.

The plaintiff asserts that his First Amendment rights were violated when jail staff denied his grievances. He seeks to hold defendants Beauvias, Willson and Schmidt liable, but the plaintiff does not explain what role those defendants had in denying or mishandling his grievances. He does not say whether the defendants personally reviewed and denied or mishandled his grievances, and he does not allege anything at all against defendant Schmidt. For a defendant to be liable under §1983, the plaintiff must establish that the defendant personally "acted or failed to act with a deliberate or reckless disregard of the plaintiff's constitutional rights." Brownlow v. Van Natta, 2 F. App'x 516, 518 (7th Cir. 2001) (citing Miller v. Smith, 220 F.3d 491, 495 (7th Cir. 2000), and Starzenski v. City of Elkhart, 87 F.3d 872, 880 (7th Cir. 1996)). The plaintiff's allegations fail to satisfy that standard and do not sufficiently state any defendant's personal involvement with his grievances.

Even if the plaintiff had alleged enough to establish the defendants' personal responsibility for denying or mishandling his grievances, there is no inherent constitutional right to a grievance system. Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996). That means the plaintiff's allegations that his grievances went unanswered or were mishandled do not state a claim at all against any person. See Owens v. Hinsley, 635 F.3d 950, 953 (7th Cir. 2011); George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007).

The plaintiff alleges that he was transferred to the Brown County Jail after he complained about not being able to contact his attorney. This suggests a claim that Outagamie County Jail staff transferred the plaintiff in retaliation for his complaints about his attorney. The court analyzes that claim under the First Amendment. See Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). To state a claim of retaliation, the plaintiff must allege that "he engaged in a protected activity," "he suffered a deprivation likely to prevent future protected activity," and "his protected activity was a motivating factor in the defendants' decision to retaliate." Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (citing Perez, 792 F.3d at 783). Complaining about prison conditions, such as the inability to contact one's attorney, is protected conduct. Id. But the plaintiff does not allege he was transferred *because* he made the complaints; he says only that he was transferred *after* he made them. To satisfy the third element— that his protected conduct motivated the defendants' retaliatory action—the plaintiff must show more than that the defendants' actions occurred after his protected activity. He must show "that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." Nieves v. Bartlett, 139 S. Ct. 1715, 1722 (2019); see Winston v. Fuchs, 837 F. App'x 402, 404 (7th Cir. 2020). The amended complaint does not make that connection, so it does not state a First Amendment claim of retaliation.

The plaintiff alleges that DOC officials violated his First Amendment right to exercise his religion by forcing him to complete a sex offender evaluation class, which involved him discussing his sexual history with DOC staff. Incarcerated persons retain a limited right to exercise their religious beliefs. See O'Lone v. Shabazz, 482 U.S. 342, 348 (1987). To proceed under the Free Exercise Clause of the First Amendment, the plaintiff must show prison

16

officials "intentionally and substantially interfere[d] with [his] ability to practice his faith" and that the prison's restriction is not "reasonably related to a legitimate penological interest." Garner v. Muenchow, 715 F. App'x 533, 536 (7th Cir. 2017) (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). The amended complaint does not contain enough information to allow the plaintiff to proceed on this claim. The plaintiff says the prison forced him to complete the sex offender evaluation class because Meyer and Naumann alleged that he sexually assaulted them, and Schubart, Braun and Teigen relied on those allegations in seeking criminal charges and revocation of the plaintiff's supervision. But the plaintiff has not alleged that DOC staff knew that he was Muslim or knew that discussing his sex life with someone other than his significant other violated the tenets of his faith. He does not allege that he notified officials of his faith and his concerns or that he requested accommodations. His allegations suggest only that the prison required him to complete this class based on its legitimate interest in rehabilitating prisoners while in DOC custody. On these facts, the court will not allow the plaintiff to proceed under the First Amendment on a claim related to the sex offender evaluation class he was required to take.

The plaintiff also seeks to proceed on a claim under RLUIPA and RFRA related to the asserted violation of his religious beliefs. RLUIPA provides heightened protection for incarcerated persons' exercise of their religion. Sossamon v. Texas, 563 U.S. 277, 281 (2011). Under RLUIPA, a claimant may "assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. §2000cc-2(a). A prisoner's right to "appropriate relief" under RLUIPA, however, does not encompass monetary damages. See Vinning-El v. Evans, 657 F.3d 591, 592

(7th Cir. 2011) (citing <u>Sossamon</u>, 563 U.S. 277). Nor does RLUIPA permit any relief against public employees; it permits relief only against "governmental bodies that receive federal funds and accept the conditions attached by the statute." <u>Id.</u> (citing <u>Nelson v. Miller</u>, 570 F.3d 868, 889 (7th Cir. 2009), <u>abrogated on other grounds by</u> <u>Jones v. Carter</u>, 915 F.3d 1147 (7th Cir. 2019)). The plaintiff cannot proceed under RFRA because that statute applies only to federal prisoners. <u>See</u> <u>Holt v. Hobbs</u>, 574 U.S. 352, 358 (2015); <u>Levy v. Holinka</u>, No. 09-CV-279, 2009 WL 1649660, at *4 (W.D. Wis. June 11, 2009).

The plaintiff seeks to proceed on his RLUIPA claim against the DOC, where he says he was forced to complete the sex offender evaluation class. He alleges that he "firmly believes" that discussing his sexual history with a woman who is not his partner or wife violates his religion. Dkt. No. 10 at 9. Whether this belief is central to the plaintiff's religious beliefs is irrelevant. <u>Schlemm v. Wall</u>, 784 F.3d 362, 364 (7th Cir. 2015) (citing 42 U.S.C. §2000cc–5(7)(A)). The plaintiff's allegations are sufficient to proceed on a claim under RLUIPA. But as noted above, the plaintiff cannot proceed on this claim for money damages. The only relief he may seek under RLUIPA is injunctive relief prohibiting the DOC from forcing the plaintiff to participate in sex offender evaluation classes. The court will add DOC Secretary Kevin A. Carr as a defendant for the plaintiff's RLUIPA claim.

Finally, the plaintiff alleges that defendants Naumann, Schubart, Teigen, Meyer and Kieya defamed him by making false reports of his alleged sexual assaults and/or relying on those false statements in the criminal complaint and revocation petition filed against the plaintiff. Defamation occurs when a person lies about someone and causes them harm as a result. <u>Lynch v. Holder</u>, No. 19-cv-1601-pp, 2020 WL 998542, at *3 (E.D. Wis. Feb. 28, 2020). Claims of

defamation "are *state-law* claims." Id. (emphasis in original). The Constitution does not forbid defamation, and it does not deprive a person of his liberty protected under the Due Process Clause. Edwards v. Strahota, No. 15-cv-845-pp, 2016 WL 614697, at *6 (E.D. Wis. Feb. 16, 2016) (quoting Smith v. City of Chicago, 992 F. Supp. 1027, 1030 (N.D. Ill. 1998), and citing Davis v. City of Chicago, 53 F.3d 801, 804 (7th Cir. 1995)). That means a Wisconsin resident (like the plaintiff) who wants to sue another Wisconsin resident (like the defendants) for lying about him "may do so in *state* court, but not in *federal* court." Lynch, 2020 WL 998542, at *3 (emphasis in original).

That said, 28 U.S.C. §1367(a) allows a federal court to exercise "supplemental" jurisdiction over state law claims that are "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Because the court is allowing the plaintiff to proceed against Teigen and Schubart, and because his claims against them include allegations that they defamed him, the court will exercise supplemental jurisdiction over the plaintiff's state-law claim of defamation.

The plaintiff seeks damages, declaratory relief that the defendants' actions violated his rights and injunctive relief related to the allegedly false reports about his arrest and conduct. The plaintiff cannot obtain declaratory or injunctive relief related solely to the defendants' alleged violations of his rights in the past. See Green v. Mansour, 474 U.S. 64, 68–73 (1985). He may seek declaratory or injunctive relief only if the relief he seeks is *prospective*—that is, if he seeks relief from future harm, Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

The declaratory relief the plaintiff seeks relates only to completed harm. He does not seek declaratory judgment on any potential future issue. He cannot obtain that relief in this case. His request for injunctive relief involves elements of completed acts (the allegedly false reports the defendants filed) and future harm (his request that the defendants "remove the false allegations from his file"). Dkt. No. 10 at 11. The court will allow the plaintiff to proceed only on his request for future injunctive relief against Secretary Carr, who as the Secretary of the DOC is a proper defendant for the plaintiff's request for injunctive relief. See Gray v. McCaughtry, 72 F. App'x 434, 437 (7th Cir. 2003) (citing Feit v. Ward, 886 F.2d 848, 858 (7th Cir. 1989) (proper defendants for purposes of injunctive relief were supervisory officials of government agency)).

2.  *Official Capacity*

The plaintiff also seeks to sue the defendants in their official capacities. Claims against an official in his official capacity represent another way to plead claims against the entity that he represents or for which he works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). That means the court must construe the claims against Teigen as if the plaintiff had brought them against Grand Chute (because he works for the Grand Chute Police Department) and the claims against defendants Willson and Beauvias as if he had brought them against Outagamie County (because they work for the Outagamie County Sheriff's Department). See id. at 165–66.

A local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in

original). A municipality may "be held liable under § 1983 only for its own violations of federal law." Los Angeles County v. Humphries, 562 U.S. 29, 36 (2010) (citing Monell, 436 U.S. at 694). To demonstrate municipal liability, the plaintiff "must demonstrate that there was an 'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" Estate of Perry v. Wenzel, 872 F.3d 439, 461 (7th Cir. 2017) (quoting Daniel v. Cook County, 833 F.3d 728, 734 (7th Cir. 2016)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 138 (1988) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479–80 (1986) (emphasis in original)). The plaintiff has not alleged that Teigen, Willson or Beauvias violated his rights under an unconstitutional policy or custom of Grand Chute or Outagamie County. He alleges that the defendants personally violated his rights through their own actions. The plaintiff has not alleged sufficient facts for the court to allow him to proceed against these defendants in their official capacities.

The court construes the claim against defendant Schubart in her official capacity as claims against the DOC. Because claims against the DOC are "no different from a suit against the State itself," the court construes this claim as having been brought against the State of Wisconsin. See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989) (citing Graham, 473 U.S. at 165–66; Monell, 436 U.S. at 690 n.55). But "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." Id. at 71. That means the plaintiff may not recover monetary damages against Schubart in her official

capacity. Lapides v. Bd. of Regents of the Univ. Sys. of Ga., 535 U.S. 613, 617 (2002) (citing Will, 491 U.S. at 66); Williams v. Wisconsin, 336 F.3d 576, 580 (7th Cir. 2003).

That leaves only the plaintiff's claim for injunctive relief. The court has permitted the plaintiff to proceed on his claim for injunctive relief against the DOC. As the court explained above, the proper defendant for that claim is Secretary Carr, who can enforce the relief the plaintiff seeks through an injunction. Allowing the plaintiff to proceed on his request for injunctive relief against Schubart in her official capacity would be duplicative because the true defendant for that claim also is the DOC. See Hamilton v. Gavin, No. 22 C 02285, 2023 WL 2161663, at *3 (N.D. Ill. Feb. 22, 2023) (quoting Sanders v. Sheahan, 198 F.3d 626, 629 (7th Cir. 1999) ("A claim against a government employee acting in his official capacity is the same as a suit directed against the entity the official represents.")). The court will allow the plaintiff to proceed on his request for injunctive relief against Secretary Carr but will not allow him to proceed on that claim for relief against Schubart in her official capacity because doing so would be duplicative and unnecessary. The court will dismiss the plaintiff's claims against the defendants in their official capacities.

To summarize, these are the claims on which the plaintiff may proceed and the relief he may obtain: 1) a Fourth Amendment claim against Sergeant Teigen in his individual capacity for false arrest/false imprisonment; 2) a Fourth Amendment claim against Schubart in her individual capacity for passing on allegedly false information that led to his arrest and probation revocation; 3) a Sixth Amendment claim against Lieutenants Willson and Beauvias in their individual capacities for denying the plaintiff access to his attorney; 4) a RLUIPA claim against the DOC through Secretary Carr; and 5) a

state-law defamation claim against Teigen and Schubart. The plaintiff may proceed on his requests for damages and prospective injunctive relief. The court will dismiss all other defendants and claims, including all claims against the defendants in their official capacities and the plaintiff's claim for declaratory relief and retroactive injunctive relief.

## III.   Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DISMISSES** defendants Autumn Meyer, Liza Naumann, Tracey Kieya, Ryan Braun, Alex Johnson, Daniel Running and Captain Schmidt.

The court **ADDS** DOC Secretary Kevin A. Carr as a defendant in this lawsuit. The court **DIRECTS** the Clerk of Court to add defendant Carr to the docket.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendants Jennifer Schubart and Kevin A. Carr; the court **ORDERS** defendants Schubart and Carr to respond to the amended complaint within 60 days.

The court **ORDERS** the U.S. Marshals Service to serve a copy of the amended complaint and this order on defendants Joseph Teigen at the Grand Chute Police Department and Lieutenants Willson and Beauvias at the Outagamie County Sheriff's Department under Federal Rule of Civil Procedure 4. Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. §1921(a). Although Congress requires the court to order service by the U.S. Marshals Service, it has not made any

provision for either the court or the U.S. Marshals Service to waive these fees. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§0.114(a)(2), (a)(3). The U.S. Marshals Service will give the plaintiff information on how to remit payment. The court is not involved in collection of the fee.

The court **ORDERS** defendants Teigen, Willson and Beauvias to file a responsive pleading to the amended complaint.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$338.60** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Stanley Correctional Institution.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge

institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 3rd day of August, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

---

Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.