UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES B. GILL, SR.,

                    Plaintiff,

        v.                                          Case No. 23-cv-256-pp

JOSEPH TEIGEN, *et al.*,

                    Defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 44), GRANTING DOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NO. 48), CONVERTING DOC DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS TO MOTION FOR SUMMARY JUDGMENT AND GRANTING CONVERTED MOTION (DKT. NO. 48) AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO CONDUCT NON-STENOGRAPHIC ORAL DEPOSITIONS (DKT. NO. 56)**

        Plaintiff Charles B. Gill, Sr., who is incarcerated at Stanley Correctional Institution and who is representing himself, is proceeding under 42 U.S.C. §1983 on various claims against state officials. The plaintiff moves for partial summary judgment on the merits of his Sixth Amendment claim against Outagamie County Sheriff's Department Lieutenants Willson and Beauvais. Dkt. No. 44. The defendants from the Wisconsin Department of Corrections, probation agent Schubart and DOC Secretary Carr[1] (DOC defendants), move for summary judgment on the plaintiff's claim under the Religious Land Use

_____

[1] The court added DOC Secretary Kevin A. Carr for purposes of responding to the RLUIPA claim, for which, if he prevails, he may obtain only injunctive relief prohibiting the DOC from requiring him to participate in sex offender evaluation classes, not money damages. Dkt. No. 14 at 18.

1

and Institutionalized Persons Act (RLUIPA) on the ground that the plaintiff failed to exhaust his administrative remedies, and they move for judgment on the pleadings on the plaintiff's state-law claim of defamation against defendant Jennifer Schubart. Dkt. No. 48. The plaintiff also moves to conduct non-stenographic oral depositions. Dkt. No. 56. This order resolves those motions.

## I.   Facts

### A.   Procedural Background

On August 3, 2023, the court screened the plaintiff's amended complaint. Dkt. No. 14. The court allowed the plaintiff to proceed on claims that Grand Chute Police Sergeant Joseph Teigen falsely arrested and imprisoned him; that probation agent Schubart passed on allegedly false information that led to his arrest and revocation of his probation; that Outagamie County Sheriff's Department Lieutenants Willson and Beauvais denied him his right to counsel; that the DOC violated his rights under RLUIPA by forcing him to participate in a sex offender evaluation class and to complete a sexual history questionnaire in the presence of a woman; and a state-law claim that Teigen and Schubart defamed him. Id. at 22–23.

On November 9, 2023, after counsel for all defendants had appeared and answered the amended complaint, the court denied the plaintiff's motions for a preliminary injunction or temporary restraining order, for default judgment and to strike Willson and Beauvais's answer to his amended complaint and affirmative defenses. Dkt. No. 42. Four days later, the court issued a scheduling order setting a deadline of January 12, 2024 for the defendants to

move for summary judgment on exhaustion grounds, if they so chose. Dkt. No. 43.

On January 11, 2024, one day ahead of that deadline, the court received the plaintiff's motion for partial summary judgment on his Sixth Amendment claim against Willson and Beauvais. Dkt. No. 44. At the January 12, 2024 deadline, the court received the DOC defendants' motion for summary judgment on exhaustion grounds and motion for judgment on the pleadings. Dkt. No. 48. The court ordered the plaintiff to respond to the defendants' motion by February 12, 2024. Dkt. No. 55.

On January 22, 2024, the court received the plaintiff's motion to conduct non-stenographic oral depositions. Dkt. No. 56. The DOC defendants responded to that motion on February 12, 2024. Dkt. No. 67.

On February 2, 2024, the court extended to March 4, 2024 the plaintiff's deadline by which to respond to the DOC defendants' motion for summary judgment and judgment on the pleadings, because the plaintiff said in a letter to the court that he had not received the motion and could not respond to it. Dkt. No. 59. But later that day, the court received the plaintiff's response materials to the DOC defendants' motion. Dkt. Nos. 61–63.

On February 6, 2024, the court extended the deadline for Willson and Beauvais to respond to the plaintiff's motion for partial summary judgment. Dkt. No. 66. The court also stayed the parties' deadlines for completing discovery and filing dispositive motions on the merits until the court could

decide the pending motions for summary judgment. Id. Willson and Beauvais filed their response materials on February 26, 2024. Dkt. Nos. 69–74.

On April 1, 2024, the court received the plaintiff's motion for summary judgment on the merits of his other claims. Dkt. No. 77. On April 4, 2024, the court issued an order denying that motion without prejudice because it previously had stayed the deadline for the parties to move for summary judgment on the merits of the plaintiff's claims. Dkt. No. 82. The court explained that, "[i]f necessary, the plaintiff may re-file the motion after the court has ruled on the pending motions for summary judgment." Id.

B.      Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 44)

In ruling on a motion for summary judgment, the court considers the parties' proposed facts "only to the extent they are clearly and obviously supported by citations to the . . . record." Jenkins v. Syed, 781 F. App'x 543, 545 (7th Cir. 2019) (internal quotation marks omitted). The court will deem admitted any facts that the opposing party does not properly contest. See Civil Local Rule 56(b)(4) (E.D. Wis.); Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] failure to respond by the nonmovant as mandated by the local rules results in an admission.").

1.      *Factual Background*

The plaintiff avers that on January 25, 2023, he was a pretrial detainee at the Outagamie County Jail. Dkt. No. 46 at ¶2. He says that after "reading his paperwork," he noticed that Lieutenant Ryan Braun (not a defendant) checked a box stating that the plaintiff had signed a statement admitting to

probation violations. Id. The plaintiff says he "did not admit to sexually assaulting anyone." Id. The plaintiff attempted to contact his attorney by phone, but his phone PIN was blocked. Id. at ¶3. He says that after he was moved to the fourth floor of the jail, he asked to speak with a supervisor; Lieutenant Beauvais responded. Id. The plaintiff says that at that point, he learned that Beauvais had blocked his PIN for disciplinary reasons because Beauvais served the plaintiff a Notice of Disciplinary Hearing Rights charging him with misusing the phone system. Id. at ¶4. The plaintiff says he told Beauvais that he needed to call his lawyer as soon as possible, but that Beauvais "told [him] to write to [his] attorney instead." Id. The plaintiff says that "[a]t that time the 7 day phone restriction had already been imposed." Id.; Dkt. No. 46-1 at 1.

The plaintiff avers that on January 27, 2023, Lieutenant Willson "found [the plaintiff] guilty of the rule violations and upheld the one week phone restriction." Dkt. No. 46 at ¶5; Dkt. No. 46-1 at 2. The plaintiff says that once again, he explained that he needed to call his lawyer, but that Willson "told [him] to write to [his] attorney." Dkt. No. 46 at ¶5. The plaintiff avers that "immediately after" Willson upheld his sanction, the plaintiff "filed the Outagamie County Jail Disciplinary Appeal Form." Id.; Dkt. No. 46-1 at 3. He says that on January 31, 2023, Captain K. Schmidt (not a defendant) stated in a letter response to his appeal, "As far as your access to your attorney or public defender, you are still able to write a letter to them to maintain contact if so desired." Dkt. No. 46 at ¶6 (quoting Dkt. No. 46-1 at 4). The plaintiff attached

copies of Schmidt's response (and all his exhibits) to his brief, declaration and proposed facts. The response to his appeal reads as quoted above, but it goes on to say, "You could reach out to a Lieutenant and provide them with your attorneys [*sic*] name and phone number. The Lieutenant will verify the number and we can provide an exception to that number so you would be able to call it." Dkt. No. 46-1 at 4.

The plaintiff says that he filed a grievance "to try and correct the problem," but his that grievance "was denied on all levels." Dkt. No. 47 at ¶6. The plaintiff cites no evidence in support of this statement of proposed fact, and the grievance he says he filed is not among his attached exhibits.

2. *Defendants' Response*

Willson and Beauvais provided their own proposed facts in opposition to the plaintiff's motion for summary judgment. Dkt. No. 73. They do not dispute that Beauvais blocked or authorized other jail staff to block the plaintiff's phone PIN on January 25, 2023 for disciplinary reasons. Id. at ¶7. Beauvais explains that the plaintiff was charged with providing his phone PIN to another incarcerated person to use, which is not allowed. Dkt. No. 70 at ¶3. Willson agrees that he conducted the plaintiff's disciplinary hearing, during which the plaintiff "admitted he dialed the phone using his pin number and then gave the phone to another inmate." Dkt. No. 71 at ¶2. Willson found the plaintiff guilty of the violations and imposed the one-week phone restriction, from January 25 to February 1, 2023. Id.

Beauvais and Willson both aver that the plaintiff did not tell them that he urgently needed to contact his attorney. Id. at ¶3; Dkt. No. 70 at ¶4. Both also aver that they never told the plaintiff "that if he wanted to talk to his attorney he had to write to the attorney." Dkt. No. 70 at ¶4; Dkt. No. 71 at ¶3. They explain that detainees who wish to contact their attorneys "can write their attorney, contact the Public Defenders' office via the kiosk system or request to call their attorney." Dkt. No. 70 at ¶4; Dkt. No. 71 at ¶3. If the detainee has a private attorney, he must ask in writing to contact his attorney and provide the attorney's name, address and telephone number for jail staff to verify. Dkt. No. 70 at ¶4; Dkt. No. 71 at ¶3. This procedure applies to detainees whose phone PIN has been blocked for disciplinary reasons. Dkt. No. 70 at ¶4; Dkt. No. 71 at ¶3. Willson says that once verified, jail staff enter the attorney's number "into the phone system as an unrecorded call." Dkt. No. 71 at ¶3. Willson says that if the plaintiff had asked to speak with his attorney, he "would have informed him of the process as delineated in the inmate handbook." Id. Beauvais avers that the plaintiff "never submitted any written request to call his attorney" or informed jail staff "that he needed to talk to his attorney immediately." Dkt. No. 70 at ¶4.

Beauvais avers that jail records show that the plaintiff had a "professional visit" with his attorney on January 24, January 26 and February 1, 2023. Id. at ¶¶6–8. He says that on January 29, 2023, the plaintiff made a request to the Public Defender through the jail's kiosk system. Id. ¶9. Beauvais does not cite other evidence in support of these statements. On February 1,

2023, the plaintiff's one-week suspension ended, and he was able to make calls again using his PIN number and the jail's phone system. Id. at ¶10. He was transferred to a different jail the next day. Id. at ¶11. Beauvais notes that the plaintiff filed an appeal from his one-week disciplinary suspension, but he says filing that appeal "is a separate procedure from filing a grievance." Id. at ¶12. There is no evidence of the grievance that the plaintiff says he filed, and the plaintiff did not respond to Willson and Beauvais's additional proposed facts.

C.  DOC Defendants' Motion for Summary Judgment and Judgment on the Pleadings (Dkt. No. 48)

The DOC defendants combined two motions in a single document. First, they move for summary judgment on the plaintiff's RLUIPA claim, asserting that the plaintiff failed to exhaust his administrative remedies before bringing that claim. Second, they seek judgment on the pleadings for the plaintiff's state-law defamation claim against Schubart, asserting that the plaintiff failed to comply with the requirements in Wisconsin's Notice of Claim statute, Wis. Stat. §893.82. The court will address the two motions separately.

1.  *Factual Background--RLUIPA Claim (Summary Judgment)*

The plaintiff is incarcerated at Stanley Correctional Institution, which the DOC manages. Dkt. No. 50 at ¶1. Defendant Carr is the Secretary of the DOC Id. at ¶2. Defendant Schubart is a probation agent with the DOC Id. at ¶3.

Angela Hansen (not a defendant) is the director of the Bureau of Offender Classification and Movement (BOCM). Id. at ¶4. In that position, she oversees the classification review processes for offender placement in and between all DOC institutions and programs, including initial placements and

8

reclassifications. Id. Hansen avers that the DOC uses custody classifications "to determine the appropriate placement of an inmate in order to regulate the supervision and movement of inmates among institutions." Dkt. No. 51 at ¶4. Factors she considers when assigning a classification include an incarcerated person's criminal history, treatment and programming needs; the length of the sentence; the incarcerated person's conduct during current and past incarcerations; and the DOC's policy goals. Id. The BOCM classifies incarcerated persons at intake and performs at least a yearly reclassification to assess their classification, treatment and programming needs; review their adjustment to incarceration; and determine whether they should continue their current placement or be transferred to another institution. Id. at ¶5. The BOCM decision governs the classification until the next reclassification, unless the incarcerated person requests administrative review and shows that his or her classification decision was based on erroneous information. Id. at ¶7.

The amended complaint alleges that on March 6, 2023, the plaintiff met with Ms. Rohrbeck (not a defendant) at the Inmate Classification Office at Dodge Correctional Institution. Dkt. No. 10 at 9. The amended complaint alleged that because of the allegedly false sexual assault allegations against the plaintiff and because the probation defendants had recounted those allegations, the DOC forced him to participate in a sex offender evaluation class. Id. It alleged that the plaintiff "had to do a Shipley-2 Profile sheet, a

Shipley-2 Block pattern Form,[2] and finally [the plaintiff] had to answer a brief sexual history questionnaire which violates his religious beliefs." Id.

About three weeks later, on March 29, 2023, the BOCM held the plaintiff's initial classification hearing. Dkt. No. 50 at ¶9; Dkt. No. 51-1 at 1–8. After consulting with psychological services staff, the classification specialist who completed the initial Inmate Classification Report added "Sex Offender Treatment (SOT-2)" as a program need. Dkt. No. 50 at ¶9; Dkt. No. 51-1 at 5. The classification specialist's Initial Inmate Classification report explains that the plaintiff

> may request an Administrative Review of the Classification decision pursuant to DOC 302.19 by filing a current DOC-1292 (Rev. 7/2018) Administrative Review of Classification Decision form within 10 days of receipt of the final decision. Administrative Reviews are based on erroneous information, not disagreement with custody and/or placement recommendation.

Dkt. No. 51-1 at 7. Hansen avers that she searched the database related to the plaintiff's initial classification and found no request for administrative review of the March 29, 2023 classification decision. Dkt. No. 51 at ¶9.

Hansen summarizes the plaintiff's claim as asserting "that he should not have to complete Sex Offender Treatment programming based on the reported allegations of him committing sexual assault while he was out on supervision." Dkt. No. 51 at ¶7. The plaintiff agrees with this statement and asserts that he was not charged or convicted of a sex crime "but yet [he is] now labeled a sex offender, and it's written throughout [his] record." Dkt. No. 62 at ¶8 (citing Dkt.

---

[2] The Shipley-2 series of tests measures intellectual functioning and cognitive impairment. https://www.parinc.com/Products/Pkey/408.

No. 51-1 at 1–8). The plaintiff concedes that he did not file an administrative review from his classification decision. Dkt. No. 62 at ¶10. He recounts that he filed his amended complaint on March 13, 2023, and that the classification hearing took place over two weeks later, on March 29, 2023. Id. He asks, "[H]ow am I supposed to argue about something that I never brought up in my lawsuit when it had never happened yet? There was no need to exhaust the inmate classification process because this case was already filed." Id.

> 2. *Factual Background—State-Law Claim (Judgment on the Pleadings)*

The court allowed the plaintiff to proceed against Schubart on a state-law claim of defamation. Dkt. No. 14 at 18–19. The plaintiff alleges that Schubart passed along false information about alleged sexual assaults, which was used to revoke his extended supervision. Id.

The DOC defendants submitted a declaration from Peyton David (not a defendant), a paralegal with the Wisconsin Department of Justice. Dkt. No. 52 at ¶1. David avers that a part of his duties involves keeping a record of all notices of claim filed with the Attorney General, as is required under Wis. Stat. §893.82. Id. at ¶2. David avers that he searched his records of notices of claims, and he did not find any notice of claim that the plaintiff served on the Attorney General related to this lawsuit. Id. at ¶4.

The plaintiff avers that while he was in Outagamie County Jail, he asked Cary Boss (not a defendant), the State Probation Liaison, for a notice of claim form and a DOC institutional complaint form. Dkt. No. 63 at ¶6. Boss told the plaintiff that she would "look into it for [him]," but he did not see or hear from

Boss again. Id. The plaintiff says that after waiting a week, he asked Beauvais for the forms he had requested, but Beauvais told the plaintiff "to ask Ms. Boss." Id. at ¶7. The plaintiff also spoke with Officer Grunstka (not a defendant), who said she would check in with Boss. Id. at ¶8. But the plaintiff says he later "was told that Ms. Boss wasn't there." Id.

The plaintiff avers that he asked Lieutenant Evans (not a defendant) about these forms, and Evans told him that they "were forms from the DOC and the State, and that they (Outagamie County Jail) did not have either of the documents." Id. at ¶9. The plaintiff says that on January 9, 2023, he "was told" that the jail did not follow the DOC's administrative review process and had its own independent system for grievances. Id. at ¶11. The plaintiff says that this process does not explain what he should do as "a DOC inmate sitting on revocation." Id. (citing Dkt. No. 61-1 at 1).

The plaintiff avers that he wrote an informal grievance on lined paper and sent it and a request for a notice of claim form to the DOC at "PO Box 7925, Madison, WI 53707." Id. at ¶¶11–12; Dkt. No. 61 at 2. He says he never received a response to his informal complaint; after waiting fourteen days, he "deemed it denied." Dkt. No. 63 at ¶13. He says he also did not get a copy of the "State Claim form" that he requested. Id. On January 23, 2023, the plaintiff filed an appeal of what he presumed had been the denial of his institutional complaint. Id. He says that on March 13, 2023, after waiting over forty-five days for a decision from the Office of the Secretary, he electronically filed this lawsuit while at Dodge Id. at ¶15.

The plaintiff avers that on January 27, 2023, he sent an informal notice of claim via certified mail to the Attorney General at "114 East State Capital [*sic*], Madison, WI 53707" in a 6.5 x 3.5-inch envelope. Id. at ¶14; Dkt. No. 61 at 2. The plaintiff did not provide a copy of the informal notice of claim or the envelope in which he says he sent it.

## II. Discussion

### A. Summary Judgment Standard

A party is entitled to summary judgment if the party shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005). The nonmovant must provide more than allegations to defeat a motion for summary judgment; he instead must "submit evidentiary materials that set forth specific facts showing

13

that there is a genuine issue for trial." <u>Siegel v. Shell Oil Co.</u>, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). The court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in their favor. <u>See Anderson</u>, 477 U.S. at 255.

B.    <u>Plaintiff's Motion for Partial Summary Judgment (Dkt. No. 44)</u>

The plaintiff asserts that Beauvais and Willson violated his Sixth Amendment right to the assistance of counsel by prohibiting him from calling his attorney for seven days. Dkt. No. 45 at 2. He says he does not need to show that he suffered "actual injury" because he "had pending charges" at the time his phone privileges were restricted. <u>Id.</u> The plaintiff asks the court to grant him partial summary judgment on his Sixth Amendment claims against Beauvais and Willson but contends that a proper amount of damages for this claim "must be determined at trial." <u>Id.</u> at 3.

The defendants respond that the plaintiff wrongly characterizes his Sixth Amendment right to counsel as "absolute and unconditional." Dkt. No. 74 at 9. They contend that the Outagamie County Jail was allowed to restrict the plaintiff's phone privileges for a legitimate governmental reason, including his disciplinary infraction. <u>Id.</u> at 8–9. The defendants explain that the plaintiff was not prohibited from contacting his attorney during the seven days of his phone restriction. <u>Id.</u> at 9–10. The jail gave him other means of contacting his attorney, including writing to her and requesting an exemption to his phone restriction for an attorney call (a request the plaintiff never made). <u>Id.</u> at 10. The defendants recount that the plaintiff saw his attorney in person during his

14

seven-day phone restriction, arguing that this shows that he "still had access to his attorney through several avenues." Id. at 10–11.

The court explained in its August 3, 2023 order screening the original complaint, "The Seventh Circuit has held that '[r]estrictions on a detainee's telephone privileges that prevented him from contacting his attorney violate the Sixth Amendment right to counsel.'" Dkt. No. 14 at 14 (quoting Murphy v. Walker, 51 F.3d 714, 718 (7th Cir. 1995); and citing Tucker v. Randall, 948 F.2d 388, 390–91 (7th Cir. 1991)). But the Seventh Circuit also explained that state officials could avoid liability if they "identify legitimate reasons, security or otherwise, for limiting [detainee's] access to a telephone." Id. (citing Martin v. Tyson, 845 F.2d 1451, 1458 (7th Cir. 1988)). In Tucker, the Supreme Court held that "[d]enying a pre-trial detainee access to a telephone for four days would violate the Constitution *in certain circumstances*." Tucker, 948 F.2d at 390 (emphasis added). These cases stand for the proposition that a pretrial detainee's Sixth Amendment right to speak with his attorney over the phone while incarcerated is not unlimited.

It is undisputed that the plaintiff received a one-week restriction of his phone use because of an uncontested disciplinary infraction. It is undisputed that this restriction lasted from January 25 to February 1, 2023. The plaintiff avers that he had no access to his attorney whatsoever during those seven days. The defendants contest the plaintiff's statement and aver that the plaintiff not only saw his attorney during those seven days but had the ability to write to his attorney, contact her through the Public Defender by using the

jail's kiosk or file a written request for an exemption to the phone restriction. Both Willson and Beauvais aver that the plaintiff never requested an exemption or contacted the Public Defender. The plaintiff says in his reply brief that he "was not even able to call the Public Defender's Office at all," and that he "submitted many requests mostly in the form of grievances requesting to call his attorney." Dkt. No. 76 at 2. He cites no evidence in support of these statements, instead accusing defense counsel of not providing him requested discovery, including grievances at the jail in which he requested an exemption to call his attorney. Id. (citing Dkt. No. 76-1 at 1–4).

The court will not wade into the parties' discovery dispute because even if the documents the plaintiff describes exist and show what the plaintiff says they would, the evidence and declarations reveal genuine disputes of material fact regarding whether, despite his phone restriction, the plaintiff had reasonable access to his attorney from January 25 through February 1, 2023. A reasonable jury could credit either side's evidence and believe either side's version of the events—that the plaintiff was unable to speak with his attorney at all for the full seven days of his phone restriction, or that the plaintiff had ways to write to, contact and call his attorney but failed to follow the jail's procedures for requesting them. Because a reasonable jury could reach either conclusion, summary judgment is not appropriate on the plaintiff's Sixth Amendment claim against Beauvais and Willson. See Payne v. Pauley, 337 F.3d 767, 778 (7th Cir. 2003) ("It is the job of the jury, and not the district court

judge at summary judgment, to determine which party's evidence to credit."). The court will deny the plaintiff's motion.

The parties dispute whether the jail's restriction of the plaintiff's phone access may have violated his right to access to the courts. See Dkt. Nos. 45 at 3; 74 at 4, 9–10; at 3–4. The plaintiff also asserts in his reply brief "that Outagamie's telephone policy amounts to an unconstitutional denial of meaningful access to the courts." Dkt. No. 76 at 3. But the court did not allow the plaintiff to proceed on an access-to-courts claim, which usually arises under the First or Fourteenth Amendment and not the Sixth Amendment. See Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002) (citing cases). The court also dismissed the plaintiff's official-capacity claims and did not allow him to proceed on a claim that his rights were violated by an unconstitutional policy or custom of Outagamie County. Dkt. No. 14 at 20–21. Because the plaintiff is not proceeding on an access-to-courts claim or on a claim challenging an Outagamie County policy, the court will not address the parties' assertions about these potential claims.

C.    DOC Defendants' Motion for Summary Judgment and Judgment on the Pleadings (Dkt. No. 48)

The DOC defendants assert that the plaintiff did not even try to exhaust his administrative remedies for his RLUIPA claim before bringing this lawsuit, so Secretary Carr (on behalf of the DOC) is entitled to summary judgment on exhaustion grounds. Dkt. No. 49 at 2. They also assert that the court must dismiss the plaintiff's state-law defamation claim against Schubart because he failed to comply with Wisconsin law by filing a notice of that claim. Id.

17

1.    *RLUIPA Claim*

    a.    Exhaustion

Under the Prison Litigation Reform Act, an incarcerated person cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); <u>see</u> <u>Woodford v. Ngo</u>, 548 U.S. 81, 93 (2006). To comply with §1997e(a), an incarcerated person must "properly take each step within the administrative process." <u>Pozo v. McCaughtry</u>, 286 F.3d 1022, 1024 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). Available administrative remedies "are not limited to the inmate complaint review system" and include the classification review process, which has its own available administrative remedies. <u>Conway v. Thurmer</u>, Case No. 00-C-383-C, 2001 WL 34382017, at *5 (W.D. Wis. May 3, 2001), <u>aff'd</u>, 39 F. App'x 408 (7th Cir. 2002)

The Seventh Circuit applies a "strict compliance approach to exhaustion," <u>Dole v. Chandler</u>, 438 F.3d 804, 809 (7th Cir. 2006), and expects incarcerated persons to adhere to "the specific procedures and deadlines established by the prison's policy," <u>King v. McCarty</u>, 781 F.3d 889, 893 (7th Cir. 2015) (citing <u>Woodford</u>, 548 U.S. at 93), <u>overruled on other grounds by</u> <u>Henry v. Hulett</u>, 969 F.3d 769, 774 (7th Cir. 2020). That means that if the plaintiff failed to complete any step in the prison's administrative review process before bringing his lawsuit, the court must dismiss the plaintiff's

unexhausted claims. See Perez, 182 F.3d at 535. Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. See Pavey v. Conley, 544 F.3d 740–41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)).

Wisconsin has an available administrative procedure for review of classification decisions. See Wis. Asmin. Code §DOC 302.19. That statute provides that, "Within 10 calendar days of an inmate's receipt of a written decision concerning custody, institution placement, or program need, the inmate may request a review of the decision . . . if the inmate believes that the decision was based on erroneous information." Id. §DOC 302.19(1). Incarcerated persons seeking review must use an administrative review form provided by the department. Id. §DOC 302.19(3)(a). The request must be legibly handwritten or typed, no longer than 500 words and two pages, signed and filed under the incarcerated person's legal name. Id. §DOC 302.19(3)(b)–(e). The incarcerated person also must provide any relevant supporting documentation, which the director may accept at her discretion. Id. §DOC 302.19(3)(f). The director or the division administrator reviews the classification decision within ten days and issues a final, written decision "within a reasonable period of time following receipt of the administrative review request." Id. §DOC 302.19(4)–(6).

b.    Analysis

i.    **Procedural Tangle**

The defendants have misapprehended the plaintiff's RLUIPA claim.

19

The plaintiff filed this lawsuit on February 23, 2023—about two weeks after he arrived at Dodge Correctional Institution and about eleven days before his March 6, 2023 initial classification meeting with Ms. Rohrbeck. Dkt. No. 1; see Dkt. No. 51-1 at 1 (Initial Inmate Classification Report showing that the plaintiff was admitted to Dodge on February 8, 2023). Before the court had the opportunity to "screen" that initial, February 23, 2023, complaint to determine whether it stated claims for which a federal court could grant relief, the court received from the plaintiff his amended complaint. Dkt. No. 10. In the eighteen days between February 23, 2023 (when the plaintiff filed the original complaint) and March 13, 2023 (when the court received the amended complaint), the plaintiff had his March 6, 2023 initial classification meeting with Ms. Rohrbeck, was required to participate in a sex offender evaluation class and was required to fill out the sexual history questionnaire. At that point, he had not yet had his classification hearing, nor had he received the SOT-2 programming recommendation or been required to participate in sex offender training.

The March 13, 2023 amended complaint alleged the following about the March 6, 2023 incident:

> On March 6, 2023 at 10:30 AM, [the plaintiff] was called down to the Inmate Classification Office to see Ms. Rohrbeck at Dodge Correctional Institution. Because Meyer, and Naumann, made false sexual assault allegations, and because Probation Agent Jennifer Shubart, Probation Supervisor Ryan Braun, and Sgt. Teigen all spoke or wrote these false allegations or restated them, the DOC forced [the plaintiff] to participate in a Sex Offender Evaluation class. [The plaintiff] had to do a Shipley-2 Profile sheet, a Shipley-2 Block pattern Form, and finally [the plaintiff] had to answer a brief sexual history questionnaire which violates his religious beliefs. If

20

> [the plaintiff] had not answered these questions, there would have
> been consequences. Sex is a private act in Islam. [The plaintiff] is
> Muslim, and [the plaintiff] firmly believes that speaking about sex
> with a woman who is not his mate/girlfriend/wife outside the
> privacy of his home or bedroom is forbidden. This violates [the
> plaintiff's] First Amendment right to practice his religion, violates
> RLUIPA of 2000, and violates, The Religious Freedom Restoration
> Act of 1993. This has now put a burden on [the plaintiff] because he
> has gone against his sincere belief to try and correct the wrong done
> to him.

Dkt. No. 10 at 9. The amended complaint's conclusion alleges that the
plaintiff's "First Amendment right to practice his religion, the violation of
RLUIPA of 2000, and the Religious Freedom Restoration Act of 1993 has also
been violated." Id. at 10.

On August 3, 2023, the court issued its order "screening" the amended
complaint. Dkt. No. 14. The court allowed the plaintiff to proceed on an RLUIPA
claim against the DOC based on his allegation that discussing his sexual
history with a woman who was not his partner or wife violated his religious
beliefs. Id. at 18. The screening order said nothing about the recommendation
that the plaintiff had SOT-2 programming needs because the March 13, 2023
amended complaint did not make any allegations about that recommendation.
The recommendation had not even been made at the time the court received
the amended complaint on March 13, 2023.

In fact, the plaintiff's completion of the sexual history questionnaire
occurred *after* the plaintiff filed this federal lawsuit; the RLUIPA claim appeared
for the first time in the amended complaint the court received over two weeks
after he'd filed suit. Fed. R. Civ. P. 15(c)(1)(B) says that an amendment "relates
back" to the date of the original pleading if it "asserts a claim or defense that

arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." The plaintiff's "original pleading"—his February 3, 2023 complaint—alleged (among other things) that Lisa Naumann and Autumn Meyer falsely accused him of sexual assault and that probation officers falsely recounted those false accusations. Id. The amended complaint alleged—or appeared to the court to allege—that the plaintiff was forced to participate in the sex offender evaluation class and to complete the sexual history questionnaire on March 6, 2023 because of the false allegations made by Naumann and Meyer and because the probation officers instigated revocation proceedings based on those allegations. It appeared that this RLUIPA claim "related back" to the allegations in the original complaint, so the court allowed the plaintiff to proceed on an RLUIPA claim against the DOC based on his allegation that he was forced to participate in the March 6, 2023 sex offender evaluation class and to complete a sexual history questionnaire in the present of a woman not his partner or wife.

Since March 2023, the plaintiff has not sought to amend his complaint further, or to supplement his complaint. He *never* has asserted a RLUIPA claim based on the March 29, 2023 recommendation that he has SOT-2 program needs. He never has asserted that the sexual history questionnaire he was forced to fill out on March 6, 2023 in the presence of a woman had anything to do with the DOC's decision that he had SOT-2 programming needs. The defendants, however, perceive that the court allowed the plaintiff to proceed on "a RLUIPA claim against the Department of Corrections through Secretary Carr

for allegedly forcing [the plaintiff] to complete sex offender evaluation *classes* in violation of his religious beliefs . . . ." Dkt. No. 49 at 1 (emphasis on the plural added). They assert that the plaintiff has alleged "that he should not have to complete Sex Offender Treatment programming based on the reported allegations of him committing sexual assault while he was out on supervision." Id. at 4 (citing the amended complaint, Dkt. No. 10).

While it is true that the plaintiff has asserted in various motions and declarations filed in this lawsuit that he should not be required to participate in sex offender training programming, he has not alleged—either in the original complaint filed over a month before the SOT-2 recommendation was made or in the amended complaint filed over two weeks before the recommendation was made—that the SOT-2 programming recommendation violated his rights under RLUIPA. He has alleged *only* that being required to take the one sex offender evaluation class on March 6, 2023, and being required to fill out a sexual history questionnaire in the presence of a woman on that same date, violated his rights under RLUIPA.

In fact, after the defendants had filed their reply brief in support of their summary judgment motion, the plaintiff filed a document that he called "Plaintiff's Reply Brief in Opposition to State Defendants' Reply Brief in Support of Their Motion for Summary Judgment on the Pleadings as to Plaintiff's Tate [sic] Law Claim and Motion for Summary Judgment on Exhaustion Grounds." Dkt. No. 75. This pleading actually is a sur-reply to the defendants' reply brief (Dkt. No. 68). Neither the Federal Rules of Civil Procedure nor this court's Civil

Local Rules allow parties to file sur-replies, and the plaintiff did not ask the court's permission before filing it.[3] "'The decision to permit the filing of a sur-reply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief.'" Watt v. Brown County, 210 F. Supp. 3d 1078, 1082 (E.D. Wis. 2016) (quoting Meraz-Camacho v. United States, 417 F. App'x 558, 559 (7th Cir. 2011)). The DOC defendants did not raise new arguments in their reply brief. They responded to the assertions in the plaintiff's brief in opposition to their motion for summary judgment. The plaintiff's sur-reply takes issue with their positions and adds new information that the plaintiff could have included in his response brief. It does not assert that the defendants raised new arguments.

Nonetheless, the court has reviewed the plaintiff's sur-reply because it sheds light on the defendants' misapprehension of his claim. The sur-reply states:

> In the defendants Motion for Summary Judgment they claim that [the plaintiff] did not exhaust his administrative remedies of the March 29, 2023 Classification hearing. Realistically how can they argue about something that has not happened yet? [The plaintiff] exhausted his administrative remedies for everything else. There was no need to exhaust any administrative remedies for the March 29, 2023 hearing because this case was already filed. All our arguments take place before March 29, 2023. [The plaintiff] did not file this lawsuit first and then file administrative remedies last. As to March 6, 2023, please look at page 9 of [the plaintiff's] complaint. He clearly stated in his own handwriting and we quote "If [the plaintiff] had not answered these questions, there would have been consequences." it is clear that [the plaintiff] more or less was forced to answer those questions on March 6, 2023. [The plaintiff] followed Ms. Rohrbeck's directions. She told [the plaintiff] that there was no

_____

[3] The first sentence of the pleading says that the plaintiff is "asking this Court to please accept this reply." Dkt. No. 75 at 1.

need to file a grievance or to file any form of appeal because this was not the inmate Classification Meeting, this was a Psychological testing. Ms. Rohrbeck is not and was not [the plaintiff's] Classification Specialist, Ms. C. Riter was [the plaintiff's] Classification Specialist. See Document 51-1 EXHIBIT 1000-8. You will not find Ms. Rohrbeck's name anywhere in Document 51-1 EXHIBIT 1000-1 to EXHIBI 1000-8 because she had nothing to do with [the plaintiff's] Classification. The defendants and their attorneys have it all wrong. Ms. Rohrbeck is not a Classification Specialist. She's not from Classification at all. She is a Psychologist from the Psychological Service Unit which has offices in the Classification Unit of Dodge Correctional Institution. So the fact still remains that [the plaintiff] is not arguing about the events that happened on March 29, 2023. He is arguing about the facts that took place before March 29, 2023. In his January 9, 2023 grievance [the plaintiff] did clarify that speaking to women period about sex violated his religion. [The plaintiff] had to speak with Probation Liaison Cary Boss, his Probation Agent Heather Fredrich, who are both women, but it was at Dodge that [the plaintiff] had to go into detail, and was told not to file a grievance or an appeal because this was not classification, it was testing.

Dkt. No. 75 at 1-2. The sur-reply clarifies that the plaintiff's RLUIPA claim is based solely on the fact that on March 6, 2023, he was required to participate in a sex offender evaluation class and required to complete a sexual history questionnaire in the presence of, or perhaps orally to, Ms. Rohrbeck.[4]

The defendants may have been confused by the fact that, as the court explained in its August 3, 2023 order screening order, a plaintiff cannot recover money damages for a violation of RLUIPA. Dkt. No. 14 at 17 (citing <u>Vinning-El</u>

---

[4] In a motion for a preliminary injunction received from the plaintiff on May 24, 2024, the plaintiff asserted for the first time that during the March 6, 2023 incident, Ms. Rohrbeck had informed him "that he was to take and participate in Sex Offender Evaluation Classes." Dkt. No. 85 at 1. The plaintiff did not make that allegation in his March 13, 2023 amended complaint. The plaintiff has added to the confusion surrounding his RLUIPA claim by filing motions and other documents that add to his allegations about the March 6, 2023 incident details he did not include in his complaints.

v. Evans, 657 F.3d 591, 592 (7th Cir. 2011)). "The only relief [the plaintiff] may seek under RLUIPA is injunctive relief prohibiting the DOC from forcing the plaintiff to participate in sex offender evaluation classes." Id. On September 19, 2023, the court received from the plaintiff a proposed order for injunctive relief. Dkt. No. 25. It purported to enjoin the defendants "from forcing [the plaintiff] to take, and participate in Sex Offender treatment/evaluation classes." Id. The court concedes that sex offender *evaluation* classes and sex offender *treatment* classes likely pose the same RLUIPA concerns to the plaintiff—being required to talk about sex with others, including women. But at the time the plaintiff filed his lawsuit, he had not been forced to participate in *any* sex offender evaluation classes, and at the time he filed the amended complaint, he'd been forced to attend only *one* sex offender evaluation class and had not been classified as someone who needed sex offender training programming.

Since filing his first motion for injunctive relief in September 2023, the plaintiff has reiterated that he is "being forced to take these SOT classes which are against his religion," dkt. no. 37 at 1 (October 23, 2023), asserted that the only thing the March 29, 2023 hearing did was show that he "has now been labeled," dkt. no. 61 at 2 (February 2, 2024), said that he is "objecting to the entire Inmate Classification Exhaustion Process," dkt. no. 62 at 2 (February 2, 2024) and asserted that he "is still being forced to participate further in SOT classes even though he was never legally charged with a sex crime," dkt. no. 85 at 1 (May 24, 2024). But the fact that he subsequently has sought injunctive relief regarding the sex offender training does not change the fact that he has

made no claims regarding the sex offender training. The only claim pending before this court is the plaintiff's RLUIPA claim that on March 6, 2023, he was required to participate in a sexual offender evaluation class and to complete a sexual history questionnaire in the presence of a woman not his partner or wife. The court will not evaluate the defendants' arguments regarding whether the plaintiff exhausted his remedies regarding his SOT-2 classification, because he has not made a claim regarding that classification.[5]

### ii. **March 6, 2023 Incident**

The plaintiff was required to participate in the sexual offender evaluation class and fill out the sexual history questionnaire in the presence of a woman on March 6, 2023—about a week before he filed his amended complaint. The amended complaint does not allege that the plaintiff filed a grievance about the March 6, 2023 incident. The plaintiff's brief in opposition to the defendants' motion for summary judgment does not state that he filed a grievance about being required to fill out the sexual history questionnaire in a woman's presence—in fact, it does not mention this allegation at all. Dkt. No. 61 at 2.

It was not until the plaintiff's February 27, 2024 (unauthorized) sur-reply, filed a year after he filed this lawsuit, that the plaintiff asserted for the first time that on March 6, 2023, Ms. Rohrbeck told him that "there was no need to file a grievance or to file any form of appeal because this was not the inmate Classification Meeting, this was a Psychological testing." Dkt. No. 75 at

---

[5] If the plaintiff wants to make a claim regarding the constitutionality of the DOC requiring him to participate in sex offender training, he may file a complaint making that claim, subject to the applicable statute of limitation.

1. The sur-reply is filed under penalty of perjury, as an unsworn declaration under 28 U.S.C. §1746. Id. The plaintiff appears to be averring—well past the eleventh hour—that he did not exhaust his administrative remedies regarding the incident on March 6, 2023 because Rohrbeck told him he didn't need to, given that her meeting with him was only a psychological evaluation and not a classification hearing.

Under the PLRA, an incarcerated person "must exhaust available remedies, but need not exhaust unavailable ones." Ross v. Blake, 578 U.S. 632, 642 (2016). An incarcerated person must "exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" Id. (quoting Booth v. Churner, 532 U.S. 731, 738 (2001)). An administrative remedy is not "available" "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." Id. at 644.

But the plaintiff made this assertion for the first time in an unauthorized sur-reply brief, to which the defendants had no opportunity to respond. "[A]rguments raised for the first time in [a] reply brief are waived because they leave no chance to respond." White v. United States, 8 F.4th 547, 552 (7th Cir. 2021) (citing Wonsey v. City of Chicago, 940 F.3d 394, 398 (7th Cir. 2019); United State v. Vitrano, 747 F.3d 922, 925 (7th Cir. 2014)). The plaintiff could have alleged in his March 13, 2023 amended complaint that Rohrbeck told him he didn't need to grieve the incident on March 6, 2023. He could have alleged in his brief in response to the defendants' motion for summary judgment on

exhaustion grounds that Rohrbeck told him he didn't need to grieve the incident on March 6, 2023. He knows about the exhaustion requirement; the plaintiff has filed nine lawsuits in federal court since January 2017. His initial, February 23, 2023 complaint in this case describes the grievance he filed when he was allegedly denied the ability to contact his lawyer. Dkt. No. 1 at 9.

There is another problem with the plaintiff's tardy statement that Rohrbeck told him he did not have to file a grievance or appeal: it is, at best, skeletal. "[I]t is not enough 'to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.'" White, 8 F.4th at 552 (quoting Bank of America, N.A. v. Veluchamy, 643 F.3d 185, 190 (7th Cir. 2011) (quoting United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990))). Waiting a year into the litigation to mention a critical detail regarding exhaustion, and doing so only *after* the defendants' motion for summary judgment on exhaustion grounds has been fully brief, is not enough.

The unauthorized sur-reply also states that in his "January 9, 2023 grievance [the plaintiff] did clarify that speaking to women period about sex violated his religion." Dkt. No. 75 at 1-2. To the extent that the plaintiff meant to argue that he exhausted his remedies while incarcerated at the Outagamie County Jail by filing an informal grievance alleging that speaking to women about sex at all violated his religious beliefs, he is mistaken. On January 9, 2023, the plaintiff was in the *Outagamie County Jail*, not at Dodge Correctional Institution. The Seventh Circuit has made clear that incarcerated persons

"must comply with the specific procedures and deadlines established by *the prison's* policy." <u>King</u>, 781 F.3d at 893 (emphasis added). To grieve the March 6, 2023 incident—which occurred at Dodge Correctional Institution—the plaintiff was required to file a grievance at Dodge, following the DOC's grievance policies.

The plaintiff has not exhausted his available administrative remedies for his RLUIPA claim that on March 6, 2023 he was forced to participate in activity that violated his religious beliefs. The court will grant the defendants' motion for summary judgment and dismiss the RLUIPA claim without prejudice. <u>See</u> <u>Ford v. Johnson</u>, 362 F.3d 395, 401 (7th Cir. 2004) (explaining that "*all* dismissals under § 1997e(a) should be without prejudice"). The court will dismiss Defendant Carr because there are no exhausted claims remaining against him.[6]

       2.    *State-Law Claim and Notice of Claim*

       a.    Legal Standard

The DOC defendants frame their motion regarding the plaintiff's state-law claim as a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c), which provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The court

---

[6] Because there is no factual dispute whether the plaintiff exhausted his available administrative remedies, the court will not hold an evidentiary hearing as described in <u>Pavey</u>, 544 F.3d at 742. <u>See</u> <u>Aguirre v. Witek</u>, No. 08-C-1110, 2010 WL 1292161, at *2 (E.D. Wis. Mar. 30, 2010) (citing <u>Doss v. Gilkey</u>, 649 F.Supp.2d 905, 912 (S.D. Ill. 2009)).

may grant such a motion only if "it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." Moss v. Martin, 473 F.3d 694, 698 (7th Cir. 2007).

The court evaluates Rule 12(c) motions under the same standards that govern a motion to dismiss under Rule 12(b)(6). See Adams v. City of Indianapolis, 742 F.3d 720, 727–28 (7th Cir. 2014). As when deciding a motion to dismiss under Rule 12(b)(6), the court may not look beyond the pleadings when ruling on a motion under Rule 12(c). See Fed. R. Civ. P. 12(d); United States v. Wood, 925 F.2d 1580, 1581 (7th Cir. 1991). The pleadings include the amended complaint, the answer and any "written instrument that is an exhibit to a pleading." See Fed. R. Civ. P. 7(a), 10(c); Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012).

The DOC defendants did not limit their filings to the pleadings; they filed a declaration from Peyton David, which is not part of the pleadings. Rule 12(d) states that if a party presents matters outside the pleadings on a Rule 12(c) motion, the court may exclude those outside matters from its consideration of the motion; if it does not exclude them, the court must treat the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). If the court treats the motion as one for summary judgment, it must give the parties "a reasonable opportunity to present all the material that is pertinent to the motion." Id.

The DOC defendants assert in a footnote that the court "can consider David's declaration without converting this to a summary judgment motion because where no notice of claim is timely filed, a court lacks competency to exercise its subject matter jurisdiction." Dkt. No. 49 at 12, n.2 (citing Thorsland v. Wolter, 888 N.W.2d 247 (Table) (Wis. Ct. App. 2016). They contend that their motion effectively is a motion "to dismiss based on a court's lack of subject matter jurisdiction," which "is not limited to the allegations in the pleadings, and consideration of matters outside the pleadings does not convert the motion to a motion for summary judgment." Id. (citing Fed. R. Civ. P. 12(b)(1), (d)). The plaintiff did not respond to this footnote or address whether the court should convert the DOC defendants' motion into a motion for summary judgment.

The court finds the DOC defendants' argument for why it may consider David's declaration without converting their motion into one for summary judgment unpersuasive. The DOC defendants did not label or present their motion as a motion to dismiss for lack of subject matter jurisdiction. They presented it as a motion for judgment on the pleadings under Rule 12(c). Outside of the footnote, they do not cite Rule 12(b)(1), mention subject-matter jurisdiction or ask the court to dismiss the plaintiff's state-law claim for lack of subject matter jurisdiction. Another court in this district has observed that the Notice of Claim statute (Wis. Stat. §893.82) "does not define the limits of _federal_ subject-matter jurisdiction." Sanders v. Vishny, 563 F. Supp. 3d 938, 941 (E.D. Wis. 2021) (emphasis added). That court declined to "treat the

defendants' motion to dismiss as one under Federal Rule of Civil Procedure 12(b)(1)" seeking to dismiss for lack of subject matter jurisdiction and instead "construe[d] the motion as being brought under Federal Rule of Civil Procedure 12(b)(6)." Id. But the court also may not consider matters outside the pleadings when deciding a motion to dismiss under Rule 12(b)(6). Id. at 941, n.2.

This court previously converted a Rule 12(b)(6) motion into one for summary judgment where the defendant "ask[ed] the court to rely on evidence outside of the pleadings—[the defendant's] declaration—in support of his Rule 12(b)(6) motion." Hernandez v. Folami, Case No. 16-cv-78-pp, 2017 WL 435790, at *2 (E.D. Wis. Feb. 1, 2017). The court cited Miller v. Herman, in which the Seventh Circuit approved of a district court converting a motion to dismiss under Rule 12(b)(6) into one for summary judgment because the defendant had "frame[d] its motion in the alternative as one for summary judgment," and the plaintiff had "responded to the motions collectively and universally." 600 F.3d 726, 733 (7th Cir. 2010) (internal quotation omitted). The Seventh Circuit explained that the parties "had the opportunity to 'present all the material that is pertinent to' a summary judgment motion." Id. (quoting Fed. R. Civ. P. 12(d)).

The court finds that the same is true here. The DOC defendants filed one motion containing both their motion for judgment on the pleadings and their motion for summary judgment on exhaustion grounds. Dkt. No. 48. That motion complies with the Federal Rules and the court's Local Rules governing motions for summary judgment. See Fed. R. Civ. P. 56; Civil L.R. 56(b)(1)(C)

and (b)(6). As the court recounted, it ordered the plaintiff to respond to the DOC defendants' motion within thirty days, as it would require for any motion for summary judgment. Dkt. No. 55 (citing Civil L.R. 56(b)(2)). The court explained the procedures the plaintiff needed to follow when responding to the DOC defendants' motion, which included their motion for summary judgment on exhaustion grounds and their motion for summary judgment on the pleadings. Id. The plaintiff's response materials comply with those procedures for the DOC defendants' motion for summary judgment on exhaustion grounds *and* their motion for judgment on the pleadings. The plaintiff's brief, proposed facts and declaration address the motions as if they both sought summary judgment. In other words, as in Miller, the plaintiff "responded to the motions collectively and universally." 600 F.3d at 733. For all intents and purposes, the parties have briefed the DOC defendants' motion for judgment on the pleadings as if it were a motion for summary judgment.

The court finds that the parties had a reasonable opportunity to present all material pertinent to the DOC defendants' motion, as if it were a motion for summary judgment. The court will convert their motion for judgment on the pleadings into one for summary judgment and will decide it.

b.    State Law

Wisconsin Statute §893.82 provides that

no civil action or civil proceeding may be brought against any state officer, employee or agent for or on account of any act growing out of or committed in the course of the discharge of the officer's, employee's or agent's duties . . . unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves

upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employee or agent involved.

Wis. Stat. §893.82(3). Notice of the claim must be "sworn to by the complainant" and "served upon the attorney general at his or her office in the capitol or at the department of justice by personal service or by certified mail." Wis. Stat. §893.82(5). The Notice of Claim statute is "both 'jurisdictional' and 'a condition precedent to the right to maintain an action.'" <u>Sanders</u>, 563 F. Supp. 3d at 941 (quoting <u>Ibrahim v. Samore</u>, 118 Wis. 2d 720, 726 (Wis. 1984)). A claimant seeking to file a state action must strictly comply with all requirements in the Notice of Claim statute. <u>See</u> <u>Taylor v. Anderson</u>, Case No. 19-C-300-JDP, 2021 WL 808648, at *6 (W.D. Wis. Mar. 3, 2021) (citing <u>Riccitelli v. Broekhuizen</u>, 595 N.W.2d 392, 399 (Wis. 1999)).

c.    Analysis

It is undisputed that the plaintiff did not file a formal notice of claim with the Attorney General for his state-law defamation claim against Schubart, as is required under Wis. Stat. §893.82. The plaintiff says this is because he had no access to notice of claim forms in the Outagamie County Jail. The plaintiff insists that he requested the form from the DOC on January 9, 2023, while he was incarcerated at Outagamie County Jail. He says that on January 27, 2023, after not receiving a form, he sent an informal notice of claim to the Attorney General's Office because the jail did not have any forms. The plaintiff did not provide a copy of this informal notice and does not say what it said. Regardless

of its contents, the DOC defendants assert that there is no evidence of either a formal notice of claim or the plaintiff's alleged informal notice of claim.

Even if the Attorney General had received the plaintiff's informal notice, the plaintiff does not describe what information he included in the informal notice and does not say whether it included the details that §893.82 requires a claimant to include. As the court explained above, that statute requires strict compliance, which means that the plaintiff must have included the time, date, location and circumstances of Schubart's alleged defamation. The plaintiff does not say whether he included all—or any—of this information in his informal notice of claim. His avers in his declaration only that he sent the informal notice via certified mail in a 6.5 by 3.5-inch envelope from the Outagamie County Jail. Dkt. No. 63 at ¶14.

The plaintiff asserts that he should be excused from complying with the Notice of Claim statute because he did not get the form he requested. But the plaintiff had 120 days to file a formal notice of claim that complied with the requirements of §893.82. He alleges that the "event causing the injury" occurred on December 28, 2022, when Schubart relayed false information about a sexual assault to police officers. Dkt. No. 14 at 4 (citing Dkt. No. 10 at 3). That means the plaintiff had until April 27, 2023, to serve a formal notice of claim that complied with §893.82.

It is undisputed that the plaintiff was transferred from the Outagamie County Jail to the Brown County Jail on February 2, 2023, and was then transferred to Dodge Correctional Institution on February 8, 2023. Dkt. No.

51-1 at 1 (listing "Admit Date" to Dodge as Feb. 8, 2023); Dkt. No. 63 at ¶4. The plaintiff had more than half of the 120 days remaining to file a notice of claim while he was incarcerated at the Brown County Jail and Dodge. But the plaintiff does not say anything about his access to notice of claim forms or his ability to file a formal notice of claim while at those facilities. He does not allege that either of those facilities failed or refused to provide him a notice of claim form or prevented him from sending formal notice to the attorney general before the 120-day deadline elapsed. He presents no reason why he could not have filed a formal notice of claim with the Attorney General before his 120-day deadline elapsed. In fact, the plaintiff filed both his initial, February 23, 2023 complaint and his March 13, 2023 amended complaint before the 120-day deadline had expired. He filed the lawsuit without using all the time allotted to him to file the required Notice of Claim.

Finally, the plaintiff questions the nature of the searches for the notice of claim performed by Hansen and David as described in their declarations. Dkt. No. 61 at 3. He describes their declarations as "totally conclusory" and faults them for not "describ[ing] the search that was done." Id. He questions whether the declarants searched "beyond the program's computerized records" and questions the agencies' "record retention policies." Id. The plaintiff provides no evidence suggesting that the BOCM or Attorney General's record-keeping practices are suspect. The plaintiff cannot create a genuine dispute of fact about the quality of the declarants' searches by claiming—without evidentiary support—that they were not performed adequately. See Davis v. Gee, Case No.

14-cv-617-wmc, 2017 WL 2880869, at *5 (W.D. Wis. July 6, 2017) (citing Scott v. Harris, 550 U.S. 372 (2007); Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008)) (explaining that allegations that are "based on little more than speculation . . . [are] insufficient to manufacture a genuine issue of fact at summary judgment.").

There is no evidence that the Attorney General's office received a formal notice of claim that strictly complied with the requirements of Wis. Stat. §893.82 from the plaintiff regarding his state-law defamation claim against Schubart. The plaintiff says he sent an informal notice of claim, but there is no evidence that the Attorney General's office received that, either. Even if it had, there is no evidence that the plaintiff's informal notice strictly complied with the requirements of the statute. The court will grant the defendants' motion and dismiss the plaintiff's state-law defamation claim against Schubart.

D.    Plaintiff's Motion to Conduct Non-Stenographic Oral Depositions (Dkt. No. 56)

The plaintiff asks the court "for a written stipulation to take a non-stenographic oral deposition pursuant to Rule 30, Fed.R.Civ.P." Dkt. No. 56. The plaintiff says that he seeks evidence "outside of his control," including testimony from former defendants Liza Naumann and Autumn Meyer. Id. He asks to subpoena those witnesses to "come together" and hold a Zoom call so he can depose them. Id. The plaintiff asks to record the audio of the depositions under Fed. R. Civ. P. 32(b)(3)(A) and asks the court to appoint a designated officer to administer the oath before the depositions under Rule 28. Id. He acknowledges that he will bear the costs for the depositions, but he asks

the court to order defense counsel to cover the costs of the depositions and bill him for reimbursement later. Id.

The DOC defendants oppose the plaintiff's request. Dkt. No. 67. They concede that the plaintiff does not need leave of the court to conduct or record the depositions, but they say that the State "cannot cover the cost of the deposition for [the plaintiff], as the duties of the Wisconsin Department of Justice do not extend to paying the deposition costs for a party-opponent." Id. (citing Wis. Stat. §165.25).

Federal Rule of Civil Procedure 30 provides detailed and lengthy procedures for conducting depositions on oral examination. Rule 30(a)(1) provides that a party may depose "any person, including a party, without leave of court." Fed. R. Civ. P. 30(a)(1). The deposing party "must give reasonable written notice to every other party," which must include "the time and place of the deposition and, if known, the deponent's name and address." Fed. R. Civ. P. 30(b)(1). The deposing party "must state in the notice the method for recording the testimony," which may include "audio, audiovisual, or stenographic means." Fed. R. Civ. P. 30(b)(3)(A). The noticing party "bears the recording costs," which means that the party *arranging the deposition* must arrange and pay for a court reporter or other official to record the deposition. Id. The deposition "must be conducted before an officer appointed or designated under" Rule 28. Fed. R. Civ. P. 30(b)(5). That officer must follow the directions in Rule 30(b)(5)(A)–(C) for beginning, conducting and concluding the deposition. Federal Rule of Civil Procedure 28 provides guidelines for the

appointed or designated official. For example, "A deposition must not be taken before a person who is any party's relative, employee, or attorney; who is related to or employed by any party's attorney; or who is financially interested in the action." Fed. R. Civ. P. Rule 28(c).

The court will deny the plaintiff's requests for the court to order the parties to stipulate to the depositions and order the defendants to pay the costs of the depositions. As the defendants argue, and Rule 30(a)(1) provides, the plaintiff does not need the court's permission to depose witnesses. Rule 30 describes the procedure the plaintiff must follow to conduct a deposition and the notice he must provide to the deponent and the defendants. There is no requirement that parties reach a "stipulation" before one party can notice a deposition. The court will not order defense counsel to pay the costs of depositions and bill the plaintiff later. Nor does not the court have the authority to waive this cost. Most incarcerated plaintiffs can obtain the information they need through written discovery. If the plaintiff believes he needs to conduct depositions to obtain relevant information for his claims, he must pay for them himself.

The court also will not subpoena the deponents or appoint an officer to conduct the depositions. The plaintiff may compel the deponents' attendance by subpoena under Rule 45. And unless the parties stipulate otherwise, the plaintiff must arrange for a qualified, appropriate official under Rule 28 to administer the oath, conduct the depositions and record the testimony. See Fed. R. Civ. P. 30(b)(5). The plaintiff, as the noticing party, also bears the costs

for making these arrangements and recording the testimony. See Fed. R. Civ. P. 30(b)(3)(A). The court will not subsidize the plaintiff's litigation by paying for the officer to take the depositions, even though the plaintiff is indigent. See Soto v. White, Case No. 19-3135, 2022 WL 2115299, at *2 (7th Cir. June 13, 2022) (citing McNeil v. Lowney, 831 F.2d 1368, 1373 (7th Cir. 1987)) (holding that the district court had no statutory authority to waive witness fees for plaintiff proceeding in forma pauperis).

The court encourages the parties to work together to arrange these depositions. In the scheduling order, the court allowed the parties to conduct depositions of incarcerated persons by remote means, which would include a Zoom conference call. Dkt. No. 43 at ¶1. The court will grant the plaintiff's motion to the extent that the plaintiff likewise may conduct depositions via Zoom or other remote means. See Fed. R. Civ. P. 30(b)(4). The plaintiff must arrange for the depositions by following the proper procedures as the court explained above and as laid out in detail in Rules 28 and 30.

## III.  Conclusion

The court **DENIES** the plaintiff's motion for partial summary judgment. Dkt. No. 44.

The court **GRANTS** the DOC defendants' motion for summary judgment on exhaustion grounds and **DISMISSES** the plaintiff's RLUIPA claim without prejudice. Dkt. No. 48. The court **ORDERS** that defendant Kevin A. Carr is **DISMISSED**.

The court **CONVERTS** the DOC defendants' motion for judgment on the pleadings into a motion for summary judgment and **GRANTS** the converted motion. Dkt. No. 48. The court **ORDERS** that the plaintiff's state-law defamation claim against defendant Jennifer Schubart is **DISMISSED**.

The court **GRANTS IN PART AND DENIES IN PART** the plaintiff's motion to conduct non-stenographic oral depositions. Dkt. No. 56. The court **GRANTS** the motion to the extent that the plaintiff may arrange with the defendants to take remote depositions of Liza Naumann and Autumn Meyer consistent with Federal Rules of Civil Procedure 28 and 30, but he must follow the procedures laid out in those rules and pay the costs for those depositions. The court otherwise **DENIES** the motion.

The court will enter a separate order setting new deadlines for the parties to complete discovery and file dispositive motions, if they choose. The court advises the parties to cooperate when conducting discovery to avoid unnecessary discovery disputes and motions.

Dated in Milwaukee, Wisconsin this 24th day of July, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**