UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES B. GILL, SR.,

                         Plaintiff,

         v.                                              Case No. 23-cv-256-pp

JOSEPH TEIGEN, *et al.*,

                         Defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT (DKT. NO. 95), GRANTING DEFENDANT TEIGEN'S MOTION
FOR SUMMARY JUDGMENT (DKT. NO. 119) AND DISMISSING DEFENDANT
TEIGEN**

         Plaintiff Charles B. Gill, Sr., who is incarcerated and is representing

himself, is proceeding under 42 U.S.C. §1983 on various claims against state

officials. On July 24, 2024, the court granted the Wisconsin Department of

Corrections (DOC) defendants' motion for summary judgment on exhaustion

grounds; converted the DOC defendants' motion for judgment on the pleadings

to one for summary judgment and granted that motion; and dismissed the

plaintiff's claim under RLUIPA, his state law claim of defamation against

defendant Jennifer Schubart and defendant Kevin A. Carr. Dkt. No. 90.

         The plaintiff separately has moved for summary judgment against the

remaining defendants, and each defendant or set of defendants has responded

and filed their own cross-motion for summary judgment. This order addresses

the plaintiff's motion for partial summary judgment against defendant Joseph

Teigen, dkt. no. 95, and defendant Teigen's cross-motion for summary

1

judgment, dkt. no. 119. The court will address the plaintiff's motions for summary judgment against the other defendants and those defendants' cross-motions for summary judgment in separate orders.

## I. Facts

### A. Procedural Background[1]

On August 19, 2024, the court issued an amended scheduling order setting new deadlines for the remaining parties to complete discovery and file dispositive motions on the merits of the plaintiff's remaining claims. Dkt. No. 93. On October 7, 2024—well ahead of the December 16, 2024 dispositive motion deadline—the plaintiff moved for partial summary judgment on his Fourth Amendment and state law defamation claims against defendant Teigen. Dkt. No. 95. On October 29, 2024, the court granted Teigen's motion to extend to November 21, 2024 his deadline to respond to the plaintiff's motion for partial summary judgment. Dkt. No. 103. At the November 21 deadline, the court received Teigen's response to the plaintiff's motion and Teigen's own motion for summary judgment with supporting documents. Dkt. Nos. 113–121.

The court ordered that within thirty days, the plaintiff must respond to Teigen's motion for summary judgment. Dkt. No. 123. The court later granted the plaintiff's motion to extend his response deadline to January 13, 2025. Dkt. No. 136. Nonetheless, the court received the plaintiff's response materials within the original deadline and on the same day that it granted his request for

---

[1] This section addresses the procedural history of the case only as it pertains to defendant Teigen, and only since the date on which the court issued the previous order granting the DOC defendants' motions. Dkt. No. 90.

an extension of time. Dkt. Nos. 137–139. Defendant Teigen timely filed his reply brief in support of his motion for summary judgment. Dkt. No. 150. The plaintiff did not file a reply brief in support of his motion for partial summary judgment, and his deadline to do so has long passed. The motions are ready for the court's decision.

B.    Factual Background

The court considers the parties' proposed facts "only to the extent they are clearly and obviously supported by citations to the . . . record." Jenkins v. Syed, 781 F. App'x 543, 545 (7th Cir. 2019) (internal quotation marks omitted). The court will deem admitted any facts that the opposing party does not properly contest by citing admissible evidence in the record. See Civil Local Rule 56(b)(4) (E.D. Wis.); Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] failure to respond by the nonmovant as mandated by the local rules results in an admission.").

The court allowed the plaintiff to proceed on a claim that Teigen falsely arrested him without probable cause, filed false charges against him and falsely imprisoned him. Dkt. No. 14 at 9–10. The court also allowed the plaintiff to proceed on a state law claim that Teigen defamed him by making false reports about the plaintiff's alleged sexual assault in his police report. Id. at 18–19.[2]

---

[2] Although the court allowed the plaintiff to proceed on a claim related to the allegedly false charges, no such claim exists under the Fourth Amendment. See Brooks v. City of Chicago, 564 F.3d 830, 833 (7th Cir. 2009) (quoting McCann v. Mangialardi, 337 F.3d 782, 786 (7th Cir. 2003)) ("A plaintiff cannot

1.  *Fourth Amendment Claim*

Teigen is a Detective Sergeant who works for the Grand Chute Police Department. Dkt. No. 120 at ¶¶1–2. On December 28, 2022, Teigen was in contact with agent Jennifer Schubart, who works for the DOC, Division of Community Corrections (DOC-DCC). Id. at ¶3. Schubart told Teigen that a client of hers, Liza Naumann, was not comfortable speaking with law enforcement but had reported that the plaintiff had sexually assaulted her. Id. at ¶4; Dkt. No. 97-1 at 16. It is undisputed that at the time, the plaintiff was on extended supervision resulting from a prior conviction in Brown County. Dkt. No. 120 at ¶58; see State v. Gill, Brown County Case 16CF1185 (available at https:// wcca.wicourts.gov/case.html). Schubart told Teigen that Naumann had reported that the plaintiff was at the Rodeway Inn in Grand Chute and "was associated with" rooms 203, 248 and 252. Dkt. No. 120 at ¶¶4–5. Schubart told Teigen that, according to Naumann, room 203 contained guns, room 248 was the plaintiff's room that contained drugs and possibly guns and room 252 had three occupants and possibly contained drugs and stolen property. Id. Schubart did not obtain a written statement from Naumann, and there is no statement from her in the record. Dkt. No. 97 at ¶10.

---

state a due process claim 'by combining what are essentially claims for false arrest under the Fourth Amendment and state law malicious prosecution into a sort of hybrid substantive due process claim under the Fourteenth Amendment.'"). The plaintiff is not proceeding on a claim of malicious prosecution, and the parties have not addressed this hybrid claim. The court will address the plaintiff's Fourth Amendment claim as it pertains to his alleged false arrest and detention and will separately address under his defamation claim the plaintiff's allegations about the allegedly false statements in Teigen's police report.

4

Teigen avers that the DOC-DCC issued an apprehension request (referred to as a "warrant," though it was not issued by a judicial officer) as a result of Schubart's report describing the sexual assault. Dkt. No. 120 at ¶¶6, 10–11; Dkt. No. 97-1 at 4. He confirmed through the Grand Chute Police Department's computer dispatch system that on December 28, 2022, the State had responded and approved the apprehension request for the plaintiff. Dkt. No. 120 at ¶7; Dkt. No. 114-1. Teigen says that he understood that Schubart was asking for the Grand Chute Police Department's assistance in apprehending the plaintiff. Dkt. No. 120 at ¶8. Teigen was not involved in the apprehension request; he simply responded to Schubart's request for assistance as a member of the Grand Chute Police Department. Id. at ¶9. He avers that he had no reason to believe that the apprehension request or the State's response to that request was improperly issued or issued without probable cause. Id. at ¶¶13, 14. The plaintiff takes issue with some of these details, but he does not cite record evidence in support of his objections and assertions. Dkt. No. 137 at ¶¶6, 8, 9, 13, 14.

Teigen and Lieutenant Russ Blahnik (not a defendant), also of the Grand Chute Police Department, separately reported to the Rodeway Inn to execute the apprehension request and arrest the plaintiff. Dkt. No. 120 at ¶15. Both officers were in full patrol uniforms. Id. at ¶16. Blahnik's report says that when he arrived, he saw in front of room 252 a male whom he identified as the plaintiff. Dkt. No. 114-2 at 7. Blahnik walked past the plaintiff, saw the door to room 252 open and heard a child's voice say the plaintiff's first name. Id. He

5

relayed that information to Teigen and waited down the hall from room 252. Id. Once Teigen arrived, both officers stood down the hall from room 252. Id.; Dkt. No. 120 at ¶17.

The officers saw a male exit room 252 and walk toward them. Dkt. No. 120 at ¶17. Based on a photo of the plaintiff that Teigen had earlier viewed, Teigen was able to verify that the male was the plaintiff. Id. at ¶18. The officers asked the plaintiff for his name, and he told them it was Charles Gill. Id. at ¶19. The officers told the plaintiff that there was a warrant for his arrest, and the plaintiff said, "whoa, whoa, whoa," and put his hands into the air. Id. at ¶¶21–22. The officers told the plaintiff that the warrant was for a probation violation. Id. at ¶23. The officers stepped toward the plaintiff and grabbed his wrists and arms, and the plaintiff began "tensing and pulling his arm forward." Id. at ¶22; Dkt. No. 114-2 at 7. The officers attempted to bring the plaintiff's arms behind his back, but the plaintiff continued to pull his arms forward, resist and tense up. Dkt. No. 120 at ¶¶24–25; Dkt. No. 114-2 at 7. The plaintiff went to the ground, and the officers told him that they were arresting him and told him to put his hands behind his back. Dkt. No. 120 at ¶¶25–26. The officers eventually handcuffed the plaintiff, and additional officers arrived to assist Teigen and Blahnik and to secure the plaintiff. Id. at ¶¶29, 32.

After the officers arrested and secured the plaintiff, Teigen entered rooms 203 and 248 with the consent of Tracey Kieya, manager of the Rodeway Inn. Id. at ¶¶33, 34. Kieya confirmed that rooms 203 and 248 were not registered to any guests and said that no one was supposed to be in those rooms. Id. at ¶35.

Teigen avers that room 203 was empty, but the officers found property, a woman and her two cats in room 248. Id. at ¶36; Dkt. No. 114-1 at 4. From past contacts with her, Teigen identified the woman as Autumn Meyer. Dkt. No. 120 at ¶37. Meyer told the officers that the plaintiff had been residing in room 248 for one month. Id. at ¶38. She said that the plaintiff had been smoking from pipes the officers found that "appeared to be used for crack cocaine or methamphetamine" and marijuana. Id. at ¶¶39–40. In a pair of pants between the bed and desk in the room, Teigen found a wallet with the plaintiff's Social Security card and other financial cards. Id. at ¶41; Dkt. No. 114-1 at 4. In a backpack, he found mail addressed to the plaintiff. Dkt. No. 114-1 at 4.

Teigen avers that he reviewed the plaintiff's 2022 criminal case from Outagamie County, which at the time was an open case charging the plaintiff with possession of methamphetamine and drug paraphernalia. Dkt. No. 120 at ¶42; see State v. Gill, Outagamie County Case 22CF825 (available at https://wcca.wicourts.gov/case.html). Teigen observed that on September 19, 2022, the plaintiff had signed a bond in that case, and it is undisputed that nothing in the record showed that the bond no longer was in effect on December 28, 2022. Dkt. No. 120 at ¶43. Teigen avers that the officers arrested the plaintiff pursuant to the apprehension request and on charges of resisting arrest, possession of drug paraphernalia and felony bail jumping. Id. at ¶¶44–45. The plaintiff emphasizes that Teigen admitted that he did not find guns or

drugs on the plaintiff's person during the arrest, though Teigen stated that he found drug residue in room 248. Dkt. No. 98 at 2 (citing Dkt. No. 97-1 at 14).

Teigen completed an Officer Report for the execution of the apprehension request and the plaintiff's arrest on December 28, 2022. Dkt. No. 120 at ¶47; Dkt. No. 114-2. He says that this report accurately documents what Agent Schubart told him on December 28, 2022. Id. at ¶48. The plaintiff does not dispute that statement. Dkt. No. 137 at ¶37. This report was forwarded to the DOC-DCC as standard practice because the plaintiff was under DOC supervision at the time. Dkt. No. 120 at ¶¶51–52.

### 2. *State Law Defamation Claim*

The plaintiff asserts that Teigen defamed him by including two false statements in his Officer Report of the December 28, 2022 incident. Dkt. No. 98 at 1. He first points to Teigen's statement that Schubart told Teigen that Naumann "was not comfortable speaking to law enforcement at this time but had disclosed allegations of sexual assault by [the plaintiff]." Id. at 1–2; see Dkt. No. 114-2 at 3. The second allegedly defamatory statement is that Naumann told Schubart "that Room 248 was supposed to be [the plaintiff's] room and that 248 contained drugs and possibly guns." Dkt. No. 98 at 2; see Dkt. No. 114-2 at 3 ("Room 248 was Charles' room with drugs and possibly guns."). He asserts that Teigen further defamed him by forwarding the report to the DOC-DCC and speaking with his parole agent. Dkt. No. 98 at 2; Dkt. No. 137 at ¶54. He asserts that he was not charged with or convicted of sexual assault after the December 28, 2022 arrest, but that he has been labeled a sex

offender and is required to take sex offender classes while incarcerated. Dkt. No. 98 at 2.

The plaintiff testified at his deposition that his defamation claim against Teigen is premised only on the two statements. Dkt. No. 113 at 8 (27:7–28:14). During that deposition, he did not mention his parole agent or Teigen's report as a basis for his defamation claim. Id.

Teigen asserts that the plaintiff did not serve him with a notice of injury or notice of claim under Wis. Stat. §893.80. Dkt. No. 120 at ¶53. The plaintiff responds that he was not required to serve the notice of injury or claim because §893.80(1d) involves claims against officers "for acts done in their official capacity," and he is proceeding on a claim against Teigen in his individual capacity. Dkt. No. 137 at ¶53 (emphasis omitted).

## II.    Discussion

### A.    Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005). The nonmovant must provide more than allegations to defeat a motion for summary judgment; he instead must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted).

B.   Analysis

1.   *Fourth Amendment Claim*

The plaintiff asserts that the DOC-DCC apprehension request was invalid and did not provide a proper basis for Teigen to arrest him. Dkt. No. 96 at 5. He maintains that the apprehension request was based on Naumann's unreliable and unverifiable claim that the plaintiff had sexually assaulted her and that he possibly had drugs and guns in rooms 203 and 248 of the Rodeway Inn. Id. The plaintiff says that this information was not enough to provide Teigen probable cause to arrest the plaintiff because Teigen did not verify Naumann's verbal statements or obtain a written version of her allegations. Id. at 5–6. He also faults Schubart for not investigating Naumann's statements or obtaining a written statement from Naumann before seeking Grand Chute Police's assistance apprehending the plaintiff and relaying those

statements to Teigen. Id. at 6–7. He says that Naumann was "an 'anonymous' tipster," whose word was unreliable and uncorroborated. Id. at 7–8.

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const. Amend. IV; Alexander v. McKinney, 692 F.3d 553, 558 (7th Cir. 2012) (citing Albright v. Oliver, 510 U.S. 266, 275 (1994) (plurality opinion)). As the court explained in the screening order, the Fourth Amendment governs the plaintiff's claim that Teigen falsely arrested and detained him. Dkt. No. 14 at 9 (citing Alexander, 692 F.3d at 558). A warrantless arrest of a citizen without probable cause is an unreasonable seizure prohibited by the Fourth Amendment. See Gibbs v. Lomas, 755 F.3d 529, 537 (7th Cir. 2014) (citing Gonzalez v. Village of W. Milwaukee, 671 F.3d 649, 655 (7th Cir. 2012)). But "[t]he existence of probable cause to arrest is an absolute defense to any § 1983 claim against a police officer for false arrest or false imprisonment." Abbott v. Sangamon County, 705 F.3d 706, 713–14 (7th Cir. 2013) (citing Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006)).

It is undisputed that the plaintiff was on extended supervision on December 28, 2022. That means that he had "a more limited liberty interest than ordinary citizens," and that Teigen's seizure of the plaintiff "require[d] something less than probable cause to be reasonable under the Fourth Amendment." Knox v. Smith, 342 F.3d 651, 657 (7th Cir. 2003) (citing Morrissey v. Brewer, 408 U.S. 471, 480 (1972); and United States v. Knights, 534 U.S. 112, 121 (2001)). Teigen did not have a judicially issued warrant for the plaintiff's arrest; he had an apprehension request from the DOC-DCC. But

"[a] probation officer needs only a reasonable suspicion that the probationer violated a probation term to issue an apprehension request." Alston v. City of Madison, 853 F.3d 901, 911 (7th Cir. 2017) (citing Knox, 342 F.3d at 657). According to the Seventh Circuit, "reasonable suspicion is 'something less than probable cause but more than a hunch' . . . that a person is, or is about to be, engaged in prohibited activity." Knox, 342 F.3d at 659 (quoting United States v. Lenoir, 318 F.3d 725, 729 (7th Cir. 2003)). The question for the plaintiff's Fourth Amendment claim is whether the apprehension request was supported by a reasonable suspicion that the plaintiff had engaged in or was about to engage in criminal activity and whether Teigen was justified in relying on the apprehension request to arrest the plaintiff.

The evidence supports a finding that the apprehension request was supported by a reasonable suspicion that the plaintiff had engaged in or was engaging in criminal activity. The evidence shows that on December 28, 2022, the plaintiff was on extended supervision under the control of the DOC. The apprehension request detailed information from Schubart, an agent with the DOC-DCC, who relayed that a client of hers (Naumann) had reported that the plaintiff had sexually assaulted her and was staying in one of three rooms at the Rodeway Inn, where he possibly had guns or drugs. Although Teigen did not know at the time that Naumann was the client, Schubart did. That means that Naumann was not an "'anonymous' tipster" as the plaintiff asserts, and that she could be held responsible if her allegations were false. See United States v. Shelton, Case No. 22-cr-162-pp, 2023 WL 4928135, at *22 (E.D. Wis.

Aug. 2, 2023) (citing <u>Florida v. J.L.</u>, 529 U.S. 266, 270 (2000)). Schubart had more than a mere hunch that the plaintiff had engaged in criminal activity; she had objective information from a known source that the plaintiff had sexually assaulted her. That information was sufficient to issue the apprehension request for the plaintiff's arrest. <u>See</u> <u>Alston</u>, 853 F.3d at 911; Wis. Admin. Code §DOC 328.27(1) (requiring DOC agents to "order an offender into custody if the offender is alleged to have been involved in assaultive or dangerous conduct").

The evidence also supports a finding that Teigen properly relied on the apprehension request to arrest the plaintiff. Teigen avers that he learned that the plaintiff was on supervision, obtained a photo of him from a previous booking and confirmed that the apprehension request was valid before he encountered the plaintiff. Teigen then obtained additional information corroborating some of what Schubart had told him. Teigen went to the Rodeway Inn, where Naumann had alleged the plaintiff was residing, and observed the plaintiff leaving room 252, which was one of the rooms Naumann had told Schubart the plaintiff was associated with. As the plaintiff asserts, this information may not have been enough to establish probable cause for the plaintiff's arrest, but as the court explained above, Teigen did not need probable cause to arrest the plaintiff based on the apprehension request. The information Teigen obtained from Schubart and his corroboration of some of that information satisfied the lesser requirement of reasonable suspicion that the plaintiff had engaged in criminal activity.

The plaintiff contends that the apprehension request later was proved invalid because Teigen did not find guns or drugs in the rooms, and because the plaintiff was not charged with sexual assault. The plaintiff asserts that when Teigen finally spoke with Naumann months later, she declined to press charges. Dkt. No. 96 at 7; Dkt. No. 97-1 at 10. But a facially valid arrest warrant, like the apprehension request issued here, defeats a §1983 claim for false arrest "even if the arrest warrant is later determined to have an inadequate factual foundation." Juriss v. McGowan, 957 F.2d 345, 350 (7th Cir. 1992) (citing Baker v. McCollan, 443 U.S. 137, 143 (1979)). Although the officers did not find guns in room 248 (they did find drug residue and paraphernalia) and the plaintiff did not face sexual assault charges, those events occurred after the officers had arrested and detained the plaintiff. The plaintiff cannot base his false arrest claim on information about events that occurred after Teigen arrested him. See Lewis v. Pleasant, No. 98 C 3058, 2000 WL 198458, at *5 (N.D. Ill. Feb. 14, 2000) (granting summary judgment on detainee's false arrest claim even though state court later determined that there was an inadequate factual basis to convict because warrant was facially valid at time of arrest).

Even if later information suggested that the factual basis for the apprehension request was inadequate, Teigen cannot be liable under the Fourth Amendment unless there also is evidence showing that he knew or had reason to believe at the time that the apprehension request was invalid. See id. at 350–51 (citing Malley v. Briggs, 475 U.S. 335, 345 (1986); and Olson v.

14

Tyler, 771 F.2d 277, 281 (7th Cir. 1985)). The plaintiff asserts that Teigen should have known that the apprehension request was invalid because he did not know Naumann and did not verify the accuracy of her statements before arresting the plaintiff. But it is undisputed that Schubart personally knew Naumann, relied on Naumann's statements when preparing the apprehension request and relayed what Naumann told her to Teigen. Although the plaintiff insists that Naumann was unreliable, he has not identified any evidence suggesting that Schubart knew or should have known that Naumann's information was false. And Teigen was not required to independently verify Schubart's information to determine whether the apprehension request was supported by a reasonable suspicion to arrest the plaintiff. See United States v. Eymann, 962 F.3d 273, 284 (7th Cir. 2020) (quoting United States v. Colon, 250 F.3d 130, 137 (2d Cir. 2001)) (explaining that officers are "entitled to rely on" information from other law enforcement agents with whom they are cooperating and who have "the 'training, responsibility or authority to make a determination of reasonable suspicion'"). Teigen avers that he had no reason to believe that the apprehension request was issued improperly or without probable cause (which, again, is more than it needed to be valid), nor did he have reason to believe that the State response to the apprehension request was invalid. The plaintiff has not provided any evidence suggesting that either document was invalid when Teigen arrested him.[3]

---

[3] Because Teigen had at least a reasonable suspicion to arrest the plaintiff, "any claim under the Fourth Amendment fails," whether it is related to the

The evidence shows that Teigen had at least a reasonable suspicion to arrest the plaintiff based on Schubart's report of Naumann's statements to her. Teigen corroborated some of those statements when he found the plaintiff at the hotel where Naumann said he was staying, leaving one of the rooms that Naumann told Schubart he was associated with. The evidence does not support a finding that the apprehension request was invalid or that Teigen knew or should have known that it was invalid when he executed it and arrested and detained the plaintiff. Teigen is entitled to summary judgment on the plaintiff's Fourth Amendment claims.[4]

### 2. *State Law Defamation Claim*[5]

The defendant asserts that the court must dismiss the plaintiff's state law defamation claim against Teigen because the plaintiff did not file a formal notice of claim under Wisconsin law before bringing his claim in federal court.

---

plaintiff's arrest, the allegedly false charges or his imprisonment after his arrest. <u>Barnett v. City of Chicago</u>, Case No. 23-2509, 2025 WL 1122049, at *2 n.2 (7th Cir. Apr. 16, 2025).

[4] Teigen also asserts that he is entitled to qualified immunity. Dkt. No. 121 at 9–11. But when a defendant "wins on the facts, [he] does not need qualified immunity.'" <u>Sierra-Lopez v. County</u>, Case No. 17-cv-1222, 2019 WL 3501540, at *10 (E.D. Wis. July 31, 2019) (quoting <u>Viero v. Bufano</u>, 925 F. Supp. 1374, 1387 (N.D. Ill. 1996); and citing <u>Antepenko v. Domrois</u>, Case No. 17-cv-1211, 2018 WL 6065347, at *6 (E.D. Wis. Nov. 20, 2018)).

[5] In the caption of his brief related to this claim, the plaintiff say that he "has adequately pleaded defamation (and intentional infliction of emotional distress) claims against Teigen." Dkt. No. 96 at 3. But whether the plaintiff properly pleaded a claim is a matter for screening, not summary judgment. <u>See</u> Dkt. No. 14 at 2–3. And the court did not allow the plaintiff to proceed on a state law claim of intentional infliction of emotional distress. He may not constructively amend his complaint to include new claims in his summary judgment briefing. <u>See</u> <u>Schmees v. HC1.COM, Inc.</u>, 77 F.4th 483, 488–89 (7th Cir. 2023).

Dkt. No. 117 at 13–14. The defendant says that even if the plaintiff had filed the notice of claim, the statements he identifies as defamatory were true, so they cannot provide a basis for his claim. Id. at 14–15. The court agrees with the defendant on both points.

The court detailed the requirements of the Wisconsin notice of claim statute for the state defendants in the previous order granting the DOC defendants' motions for summary judgment. Dkt. No. 90 at 34–35. A similar statute applies to governmental officers like Teigen, who is an officer of the Grand Chute Police Department. See Wis. Stat. §893.80. That statute requires that a person seeking to sue an officer "for acts done in their official capacity or in the course of their agency or employment" must serve written notice of the circumstances of his claim on the relevant governmental entity or employee within 120 days of the event giving rise to that claim. Wis. Stat. §893.80(1d). The notice of claim statute is "'a precursor to actually filing suit.'" Hobbs v. Willis, Case No. 22-cv-467-pp, 2025 WL 506654, at *7 (E.D. Wis. Feb. 14, 2025) (quoting Gilbertson v. City of Sheboygan, 165 F. Supp. 3d 742, 746 (E.D. Wis. 2016)). Compliance with both subsections of §893.80(1d) "'is mandatory to avoid dismissal of a lawsuit." Id. (quoting McGee v. Oshkosh Def., LLC, Case No. 18-CV-705, 2019 WL 4758216, at *8 (W.D. Wis. Sept. 30, 2019)).

It is undisputed that the plaintiff did not file a notice of claim or notice of injury before bringing his defamation claim against Teigen in federal court. The plaintiff asserts that he did was not required to file a notice of claim or notice of injury because he is proceeding on his state law claim against Teigen in his

individual capacity, and the notice of claim statute applies only to acts performed in an officer's official capacities.

The plaintiff has conflated these two, unrelated terms. Section 893.80 applies to claims against a government officer or official for acts he performed while acting as an officer of the law (that is, in his "official capacity") or in the course of his agency or employment. The statute does not apply to claims against government officers for acts performed outside their "official capacity"; in other words, no notice is required before filing a claim based on acts an officer took outside his role as an officer. That could include a suit against an officer who assaulted someone while off duty or wrote false information about someone on his personal social media account. Compare those examples to the plaintiff's claim that Teigen defamed him when Teigen wrote false statements in an official police report while acting as a Grand Chute police officer and as part of his official duties as an officer.

The plaintiff's choice about whether to sue Teigen in his individual or his official capacity has nothing to do with the notice of claim statute; it determines who the claims are being brought against. As the court explained in the screening order, suing a government actor in his official capacity represents "another way to plead claims against the entity that he represents or for which he works." Dkt. No. 14 at 20 (citing Kentucky v. Graham, 473 U.S. 159, 165 (1985); and Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). The plaintiff was required to fulfill the notice of claim statute before bringing *any* claim against Teigen for actions Teigen performed while

acting in his official capacity (as an officer), whether he sought relief against Teigen himself (in his individual capacity) or against the Grand Chute Police Department (against Teigen in his official capacity). Because the plaintiff failed to fulfill that obligation, and because his claims involve acts Teigen performed while acting in his official capacity as a Grand Chute police officer, the court must dismiss the plaintiff's state law defamation claim against Teigen.

Even if the plaintiff had complied with the notice of claim statute before bringing his defamation claim against Teigen, the statements in Teigen's report were true and cannot be the basis for a defamation claim. The court explained in the screening order that defamation "occurs when a person lies about someone and causes them harm as a result." Dkt. No. 14 at 18 (citing Lynch v. Holder, Case No. 19-cv-1601, 2020 WL 998542, at *3 (E.D. Wis. Feb. 28, 2020)). An allegedly defamatory statement "must be false," and "[t]ruth is an absolute defense to a defamation claim." Anderson v. Hebert, 798 N.W.2d 275, 280 (Wis. Ct. App. 2011) (citing Lathan v. Journal Co., 140 N.W.2d 417, 423 (Wis. 1966)).

The plaintiff asserts that Naumann's statements about the plaintiff sexually assaulting her and having guns and drugs at the Rodeway Inn were untrue. But whether what *Naumann* said was true is irrelevant to whether *Teigen* defamed the plaintiff. *Teigen* is the defendant whom the plaintiff has sued for defamation. *Teigen* wrote in his police report that Naumann had reported a sexual assault to Schubart and had given Schubart room numbers where the plaintiff was staying; he wrote that Schubart then provided that

information to Teigen, who arrested the plaintiff on suspicion of violating his extended supervision (not for the alleged sexual assault). Teigen's statements are true: Naumann *did* report those things to Schubart, and Schubart *did* report Naumann's information to Teigen. The plaintiff even conceded that Teigen's report "accurately documented what Agent Schubart reported to him on December 28, 2022." Dkt. No. 137 at ¶49. Because it is undisputed that Teigen truthfully and accurately reported what Schubart told him in his report of the December 28, 2022 incident, those statements cannot form the basis of a claim of defamation.

   3.   *Summary*

There is no genuine dispute of material fact necessitating a jury trial for the plaintiff's Fourth Amendment or state law defamation claims against defendant Teigen. The record shows that the apprehension request was supported by a reasonable suspicion that the plaintiff had engaged in or was engaging in criminal activity, and Teigen was justified in relying on that request when he arrested and detained the plaintiff for violating his extended supervision. No reasonable jury could find that Teigen's actions violated the plaintiff's Fourth Amendment rights.

The evidence also shows that Teigen did not defame the plaintiff because the statements in his report of the December 28, 2022 incident were true. Even if the statements were not true, it is undisputed that the plaintiff failed to comply with Wisconsin's notice of claim statute before bringing his defamation claim. For either of those reasons, no reasonable jury could find for the plaintiff

on his defamation claim against Teigen. The court will deny the plaintiff's motion for partial summary judgment, grant Teigen's motion for summary judgment and dismiss Teigen from this lawsuit.

## III.    Conclusion

The court **DENIES** the plaintiff's motion for partial summary judgment. Dkt. No. 95.

The court **GRANTS** defendant Joseph Teigen's motion for summary judgment. Dkt. No. 119. The court **DISMISSES** Joseph Teigen from this case.

The court will issue separate orders deciding the remaining parties' cross-motions for summary judgment. If any claims remain after the court decides all motions for summary judgment, the court will schedule a status conference to discuss the next steps in this case with the remaining parties.

Dated in Milwaukee, Wisconsin this 14th day of May, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**