UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES B. GILL, SR.,

       Plaintiff,

v.                   Case No. 23-cv-256-pp

JOSEPH TEIGEN, *et al.*,

       Defendants.

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DKT. NO. 126), GRANTING DEFENDANT SCHUBART'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 142) AND DISMISSING DEFENDANT SCHUBART**

  Plaintiff Charles B. Gill, Sr., who is incarcerated and is representing himself, is proceeding under 42 U.S.C. §1983 on various claims against state officials. The plaintiff has separately moved for summary judgment against the remaining defendants, and each defendant or set of defendants has responded and filed their own cross-motions for summary judgment. The court already has denied the plaintiff's motion for summary judgment against defendant Teigen (Dkt. No. 95), granted Teigen's cross-motion for summary judgment against the plaintiff (Dkt. No. 119) and dismissed defendant Teigen. Dkt. No. 190.

  This order addresses the plaintiff's motion for partial summary judgment against defendant Jennifer Schubart, dkt. no. 126, and defendant Schubart's cross-motion for summary judgment, dkt. no. 142. The court concludes that Schubart is entitled to judgment as a matter of law and will grant her motion

and deny the plaintiff's motion. The court will address the plaintiff's motion for summary judgment against defendants Willson and Beauvais and those defendants' cross-motion for summary judgment against the plaintiff in a separate order.

**I.    Facts**

    A.    Procedural Background[1]

On August 19, 2024, the court issued an amended scheduling order setting new deadlines for the remaining parties to complete discovery and file dispositive motions on the merits of the plaintiff's remaining claims. Dkt. No. 93. On November 18, 2024, the court granted defendants Schubart and Lieutenants Beauvais and Willson's joint motion to extend the discovery deadline to December 30, 2024 and to extend their dispositive motion deadline to January 29, 2025. Dkt. No. 112.

On December 2, 2024, the plaintiff filed a motion for partial summary judgment against Schubart. Dkt. No. 126. On December 20, 2024, the court granted Schubart's motion for leave to file a consolidated response to the plaintiff's motion and cross-motion for summary judgment. Dkt. No. 141. Only three days later, Schubart filed her consolidated response and cross-motion for summary judgment. Dkt. No. 142.

---

[1] This section addresses the procedural history of the case only as it pertains to Schubart, because the court issued the previous order granting partial summary judgment for the Wisconsin Department of Corrections (DOC) defendants and dismissing the plaintiff's claim under RLUIPA, his state law claim of defamation against Schubart and defendant Kevin A. Carr. Dkt. No. 90.

On January 8, 2025, the court granted the plaintiff's motion to extend his time to file a combined response to Schubart's motion and reply in support of his own motion for summary judgment to February 25, 2025. Dkt. No. 157. On February 3, 2025, the court again extended this deadline to March 25, 2025. Dkt. No. 173. Nonetheless, on February 20, 2025, the court received the plaintiff's combined reply in support of his motion for summary judgment and response to Schubart's motion for summary judgment. Dkt. Nos. 178–181. On March 6, 2025, the court received Schubart's reply in support of her motion for summary judgment and response to the plaintiff's additional proposed findings of fact. Dkt. No. 187–188.

B.  Factual Background

The court considers the parties' proposed facts "only to the extent they are clearly and obviously supported by citations to the . . . record." Jenkins v. Syed, 781 F. App'x 543, 545 (7th Cir. 2019) (internal quotation marks omitted). The court will deem admitted any facts that the opposing party does not properly contest by citing admissible evidence in the record. See Civil Local Rule 56(b)(4) (E.D. Wis.); Smith v. Lamz, 321 F.3d 680, 683 (7th Cir. 2003) ("[A] failure to respond by the nonmovant as mandated by the local rules results in an admission.").

1.  *Screening Order*

The court allowed the plaintiff to proceed on a Fourth Amendment claim that Schubart "pass[ed] along allegedly false information that led to the plaintiff's arrest and probation revocation." Dkt. No. 14 at 14. The court

expressed its suspicion that Schubart's reporting of those allegations "while perhaps investigatory, was required by the duties of her job," which would mean that she is absolutely immune from liability for those actions. Id. (citing Tobey v. Chibucos, 890 F.3d 634, 650 (7th Cir. 2018)). The court nonetheless allowed this claim to proceed "out of an abundance of caution." Id. The court also allowed the plaintiff to proceed against Schubart on a state law claim of defamation related to her passing along the allegedly false information. Id. at 18–19. But the court dismissed that claim in the July 24, 2024 order granting the DOC defendants' converted motion for summary judgment. Dkt. No. 90 at 35–38. Only the Fourth Amendment claim remains.

        2.    *The Parties' Proposed Facts*

Schubart is a Probation/Parole Agent for the DOC, Division of Community Corrections (DOC-DCC). Dkt. No. 144 at ¶2. Between November 11, 2022 and November 11, 2023, Schubart was the parole agent for Liza Naumann. Id. at ¶3. On December 28, 2022, Schubart had a scheduled office visit with Naumann. Id. at ¶4. Naumann reported to Schubart that the plaintiff had sexually assaulted her at the Rodeway Inn Hotel in Grand Chute, Wisconsin. Id. She told Schubart that the plaintiff was associated with room numbers 203 and 248 and that he had drugs and guns in the rooms. Id. Schubart avers that Naumann appeared to be "upset and scared for her safety," and Naumann told Schubart that she was not comfortable speaking with law enforcement. Dkt. No. 146 at ¶5. Schubart avers that she believed Naumann was homeless at the time and could be staying

4

Case 2:23-cv-00256-PP    Filed 06/05/25    Page 4 of 19    Document 193

at a hotel. Id. at ¶6. She says that she had no reason to doubt the truth of Naumann's statements. Id.

The plaintiff asserts that Schubart failed to obtain a written statement from Naumann in violation of Wisconsin law. Dkt. No. 179 at ¶4; Dkt. No. 127-1 at 9. He contests Schubart's description of Naumann's mental state but cites no evidence in support of that dispute. Dkt. No. 179 at ¶5. He asserts that "We know" that Naumann was not homeless and was living at an address in Appleton, but again he cites no evidence in support of this dispute. Id. at ¶6.

The plaintiff was on extended supervision in December 2022, but Schubart was not his parole agent. Dkt. No. 144 at ¶10. She nonetheless avers that she was obligated to inform the plaintiff's agent of any potential violations of the rules of his supervision. Id. Schubart called the office of Heather Fredrich, the plaintiff's agent, to inform Fredrich of what Naumann had reported to her. Id. at ¶11. Fredrich was away from the office, so Schubart reported what Naumann had told her to agent Denise Wiley, who was covering for Fredrich. Id. at ¶¶11–12.

Schubart avers that under the mandatory custody policy in Wisconsin Administrative Code §DOC 328.27, "offenders suspected of violating their rules of supervision, federal, state, county, and municipal laws and ordinances, or who are likely to abscond, may be detained in jail or correctional facilities." Dkt. No. 146 at ¶8. She avers that §DOC 328.27 requires an agent "to order an offender into custody if they are alleged to have been involved in assaultive or dangerous conduct." Id. Schubart avers that §DOC 328.27 mandated the

plaintiff's detention based on Naumann's allegations that he sexually assaulted her, so Agent Wiley submitted an apprehension request for the plaintiff. Id. at ¶11; see Dkt. No. 127-1 at 4. Schubart says that DOC-DCC agents rely on law enforcement to detain a client whenever feasible and may issue an apprehension request for an offender who is believed to have violated the conditions of his parole or probation. Dkt. No. 146 at ¶11. She avers that this "DOC-issued warrant[]" authorized law enforcement to arrest the plaintiff. Id.

The same day that Naumann told Schubart that the plaintiff had sexually assaulted her, Schubart contacted Sergeant Joseph Teigen with the Grand Chute Police Department and relayed what Nauman had told her. Dkt. No. 144 at ¶14. Teigen located the plaintiff at the Rodeway Inn and detained him. Id. at ¶17.[2]

Schubart avers that as soon as possible, a probation or parole agent must obtain information to decide whether a client should remain in custody. Dkt. No. 146 at ¶12. Schubart reiterates that she was Naumann's agent and was not the plaintiff's agent, which meant that she had no obligation to investigate Naumann's allegations that were the basis for the plaintiff's detention and possible revocation. Id. at ¶14. She avers that Fredrich was responsible for that investigation, which Fredrich conducted. Id. Schubart was not involved in the criminal complaint and charges filed against the plaintiff related to his arrest and detention on December 28, 2022. Id. at ¶15. She avers that she did not

---

[2] The plaintiff asserts that he "was arrested on false allegations, and with false information." Dkt. No. 179 at ¶17. The court discussed these claims in its order granting judgment for defendant Teigen. See Dkt. No. 190 at 10–16.

have the authority to require the plaintiff to complete any kind of treatment or programming related to his revocation. Id. at ¶16.

The plaintiff does not dispute that Schubart was not involved in his charges, but he asserts that "[a]ll this started with Schubart passing this false information to everyone without properly collecting the right information before she did." Dkt. No. 179 at ¶23. Yet he agreed during his deposition that he had no evidence that Schubart knew on December 28, 2022 that Naumann's allegations that the plaintiff sexually assaulted her were false. Dkt. No. 113 at 44:21–25. The plaintiff explains that he was not charged or convicted of sexually assaulting Naumann. Dkt. No. 127 at ¶12. He avers that despite not being convicted of sexual assault, he is "now labeled a sex offender" and is "required to take sex offender classes." Dkt. No. 128 at 2.

## II. Discussion

### A. Summary Judgment Standard

A party is entitled to summary judgment if she shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Federal Rule of Civil Procedure 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005). The nonmovant must provide more than allegations to defeat a motion for summary judgment; he instead must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted).

B. Analysis

Schubart asserts that she is entitled to absolute immunity for reporting Naumann's allegations against the plaintiff to Agent Wiley and law enforcement because she was acting as "a probation agent who was simply doing her job." Dkt. No. 143 at 5. Alternatively, she contends that her actions did not violate the Fourth Amendment, so she is entitled to judgment as a matter of law. Id. at 7–8.

1. *Absolute Immunity*

Schubart asserts that Wisconsin law required her to convey Naumann's allegations about the plaintiff's abusive conduct to his parole agent (or in this case, Agent Wiley, who was filling in for the plaintiff's agent, Heather Fredrich), who then shared that information with law enforcement. Dkt. No. 143 at 6. She says that this conduct—complying with the mandatory custody policy under Wisconsin law—was not investigative in nature and instead "is a quasi-judicial

8

function for which she is entitled to absolute immunity." Id. Schubart asserts that once law enforcement detained the plaintiff under Wisconsin law, his agent (Wiley) "had the responsibility to investigate any claims against [him] to determine whether his supervision would be revoked." Id.

As the court explained in the screening order, probation and parole agents are "entitled to absolute immunity for any acts [they] performed that are 'analogous to those performed by judges.'" Dkt. No. 14 at 12–13 (quoting Wilson v. Kelkhoff, 86 F.3d 1438, 1445 (7th Cir. 1996); and citing Walrath v. United States, 35 F.3d 277, 283 (7th Cir. 1994)). These acts "include 'decisions to grant, deny or revoke supervision, as well as activities inexorably connected with the execution of . . . revocation procedure and are analogous to judicial action.'" Id. at 13 (quoting Wilson, 86 F.3d at 1445) (internal quotation omitted). On the other hand, probation and parole agents "are not entitled to absolute immunity for their actions during the evidence-collection or investigatory phase of a revocation proceeding; they are entitled only to qualified immunity for those actions." Id. at 14 (citing Mays v. Johnson, 850 F. App'x 981, 982 (7th Cir. 2021); Wilson, 86 F.3d at 1446).

There are two parts to Schubart's relevant actions in this case, and the plaintiff is suing her for only one of those parts. First, Schubart *collected* information when she met with Naumann during a scheduled office visit, and Naumann stated that the plaintiff had sexually assaulted her at a hotel. As the court explained in the screening order, Schubart would be entitled to only *qualified* immunity for collecting this evidence from Naumann during what could

9

be considered the "investigatory phase" of the plaintiff's revocation. But this is not the conduct for which the plaintiff has sued Schubart. He has sued her for the second part of her actions—*relaying* the information from Naumann to Agent Wiley (who obtained the apprehension request) and to Detective Teigen (who executed that request and arrested the plaintiff). The court must determine whether relaying the information qualifies as investigatory or judicial/quasi-judicial.

The court must engage in "a functional approach" to determine whether Schubart's actions entitled to her absolute or only qualified immunity. Wilson, 86 F.3d at 1443 (citing Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993)). Under this approach, the court must "look to 'the nature of the function performed, not the identity of the actor who performed it.'" (quoting Buckley, 509 U.S. at 269). Activities that "involve decision-making that is 'judicial' in nature" receive absolute immunity. Dawson v. Newman, 419 F.3d 656, 662 (7th Cir. 2005). Conversely, absolute immunity does not apply to acts done "in the ordinary course of performing [the] everyday duties as parole officials." Id.

It is undisputed that under Wisconsin Administrative Code §DOC 328.27, a probation or parole agent is required to order an offender into custody if she is presented with allegations showing that a client was involved in assaultive conduct. See Wis. Admin. Code §DOC 328.27(1) ("An agent *shall* order an offender into custody if the offender is alleged to have been involved in assaultive or dangerous conduct." (emphasis added)). This confirms the court's

suspicion "that Schubart's reporting of Naumann's allegations to Teigen, while perhaps investigatory, was required by the duties of her job." Dkt. No. 14 at 14.

But the fact that Schubart was required to report these allegations does not necessarily mean that they were judicial or quasi-judicial in nature, entitling her to absolute immunity. Decisions from this district and the Western District of Wisconsin have found (or suggested) that similar conduct qualified both for absolute and qualified immunity. Compare Aguilar v. Gaston-Camara, Case No. 14-CV-1273, 2015 WL 13546106, at *4 (E.D. Wis. Dec. 10, 2015) (quoting Wilson, 86 F.3d at 1446) (only qualified immunity for "investigating and reporting on offender conduct"; absolute immunity for "'making a probable cause determination in deciding to issue an arrest warrant based on the evidence gathered by others'"), aff'd, 861 F.3d 626 (7th Cir. 2017); Cherry v. Husz, Case No. 14-CV-1539, 2015 WL 4527978, at *5 (E.D. Wis. July 27, 2015) (parole agent and supervisor who conducted investigation and wrote report about probationer's violation "were acting like police officers" and entitled to only qualified immunity); with Lynch v. Wis. Dep't of Corr., Case No. 23-CV-801, 2024 WL 1636700, at *1–*2 (W.D. Wis. Apr. 16, 2024) (suggesting that probation officer who "had [plaintiff] arrested . . . for allegedly harassing comments that he made on" social media would be entitled to absolute immunity).

This court finds the differentiation described in Aguilar most useful and concludes that Schubart is entitled to only qualified immunity for reporting Naumann's statements to Agent Wiley and Detective Teigen. Schubart's actions involved investigating and reporting allegations about a non-client offender on

extended supervision, allegations that could lead to his revocation. She avers that she was obligated under Wisconsin law to report those allegations to the plaintiff's agent, who then would decide whether to initiate his arrest for conduct that may have violated the terms of his supervision. Schubart was not deciding whether the plaintiff's alleged conduct should result in his revocation; arguably she could not make that decision because she was not the plaintiff's agent. Schubart instead was conveying information that she obtained from one of her clients to another agent in the ordinary course of her duties as probation agent. Schubart was not intentionally gathering information about or against the plaintiff when she met with Naumann; she was conducting a scheduled meeting with a client. But her actions became investigatory when she took Naumann's statements and reported them to Agent Wiley. Forwarding information about a parolee's actions that could lead to his revocation is not "'analogous to judicial action.'" Wilson, 86 F.3d at 1444 (quoting Walrath, 35 F.3d at 282). Those actions are more akin "to a police officer filing an affidavit seeking an arrest warrant." Id. at 1446. Although Schubart was acting as "a probation agent who was simply doing her job," not all her job duties are protected by absolute immunity. See Tobey, 890 F.3d at 650; Dawson, 419 F.3d at 662. Because Schubart's actions were investigatory and not adjudicative in nature, the court concludes that she is not entitled to absolute immunity.

        2. *Fourth Amendment*

Schubart asserts that even if the court concludes that she is not entitled to absolute immunity, her actions did not violate the plaintiff's Fourth

12

Case 2:23-cv-00256-PP   Filed 06/05/25   Page 12 of 19   Document 193

Amendment rights. Dkt. No. 143 at 7. She contends that there is no evidence suggesting that she "intentionally or recklessly provided false information that led to a Corrections warrant and [the plaintiff's] arrest." Id. To the contrary, she points out that the plaintiff conceded that Schubart "had no reason to know whether Naumann's statements were true"; and she says that her "impression of her client" when she spoke with Naumann provided a sufficient basis to believe that she was providing truthful information. Id. Schubart argues that the evidence shows she "reasonably relied on her client's demeanor and statements and the absence of anything clearly indicating her client was lying when she relayed the information to [the plaintiff's] agent and the police." Id.

The plaintiff asserts that Schubart failed to obtain a written statement from Naumann or otherwise corroborate her verbal statements that the plaintiff had sexually assaulted her before passing that information on to the plaintiff's parole agent. Dkt. No. 130 at 5–6. He says that without "undisputed evidence that supported Schubart's reasonable suspicion that [the plaintiff] violated the terms of his probation . . . Schubart did not possess enough facts to order [the plaintiff] into custody at least to investigate these other alleged violations." Id. at 6.

The court determined in its order granting summary judgment for defendant Teigen that the apprehension request for the plaintiff's arrest was valid because it was supported by a reasonable suspicion that the plaintiff had engaged in or was engaging in criminal activity and. See Dkt. No. 190 at 10–16. Because the apprehension request was valid, Schubart could be considered to

have violated the plaintiff's rights only if a reasonable officer in her position should have known that the information she provided in support of the apprehension request failed to provide a reasonable suspicion of the plaintiff's assaultive conduct, and she should not have sought the apprehension request in the first place. See Beauchamp v. City of Noblesville, Ind., 320 F.3d 733, 742 (7th Cir. 2003) (citing Malley v. Briggs, 475 U.S. 335, 345 (1986)). To demonstrate such a violation, the plaintiff must point to evidence in the record showing that Schubart "knowingly, intentionally, or with reckless disregard for the truth, [made] false statements in requesting the warrant and the false statements were necessary to the determination that a warrant should issue." Knox v. Smith, 342 F.3d 651, 658 (7th Cir. 2003) (citing Beauchamp, 320 F.3d at 742–43).

Although Schubart conveyed Naumann's statements to Agent Wiley and Detective Teigen, it was Wiley (covering for agent Fredrich) who prepared and submitted the apprehension request to law enforcement. Schubart was not the plaintiff's parole agent, so she had no obligation (and perhaps no authority) to seek his arrest. Her only role was reporting the information from her client to Wiley, which she says she was obligated to do. Wiley is not a defendant, and the plaintiff has not asserted a claim that Wiley knowingly, intentionally or with reckless disregard for the truth submitted the apprehension request to law enforcement.

The court nonetheless concludes that the plaintiff's Fourth Amendment claim against Schubart fails. Schubart obtained an in-person statement from

14

Naumann, a client of hers, that the plaintiff had sexually assaulted her. The court explained in the order granting judgment for Teigen that because Schubart knew Naumann, "Naumann was not an '"anonymous" tipster' as the plaintiff asserts." Dkt. No. 190 at 12–13 (citing Florida v. J.L., 529 U.S. 266, 270 (2000); and United States v. Shelton, Case No. 22-cr-162, 2023 WL 4928135, at *22 (E.D. Wis. Aug. 2, 2023)). Schubart observed that Naumann was upset and afraid for her safety. Naumann told Schubart where the assault occurred and gave room numbers where the plaintiff may be staying. Schubart avers that she believed Naumann was homeless at the time, so it was not suspicious that she was staying at a hotel. Schubart avers that she had no reason to doubt the truth of Naumann's statements, and there is no evidence in the record suggesting that Schubart knew that this information was false or recklessly disregarded whether it was true when Naumann reported it to her.

The plaintiff does not dispute Schubart's statement that she had no reason to doubt the truth of Naumann's statements, and he has submitted no evidence suggesting that Schubart knew that Naumann was not telling the truth or disregarded whether she was being truthful. The plaintiff conceded during his deposition that he had no evidence showing that Schubart knew Naumann's allegations were false. Dkt. No. 113 at 44:21–25. He now contends that there is no evidence verifying Naumann's emotional state at the time, but Schubart's declaration is evidence of that. The plaintiff's unsupported insistence that Schubart knew or should have known that Naumann was not being truthful "amounts to speculation rather than competent evidence sufficient to raise a

15

Case 2:23-cv-00256-PP    Filed 06/05/25    Page 15 of 19    Document 193

factual dispute about [Schubart's] knowledge." Cambronero v. Meli, Case No. 22-2103, 2023 WL 4946724, at *2 (7th Cir. Aug. 3, 2023) (citing Fed. R. Civ. P. 56(c)(4) and Pulera v. Sarzant, 966 F.3d 540, 550–51 (7th Cir. 2020)).

The plaintiff asserts that Naumann's statements to Schubart were inadmissible and unreliable hearsay, and that Schubart should have obtained a written version of the statements. But Naumann's statements to Schubart would still be hearsay if they had been in writing. See Fed. R. Evid. 801(c) (defining hearsay as a "statement"), (a) (including oral and written assertions in definition of statement). Law enforcement may use hearsay statements when seeking an arrest warrant "so long as there is a substantial basis for crediting them." Johnson v. Myers, 53 F.4th 1063, 1068 (7th Cir. 2022) (citing Illinois v. Gates, 462 U.S. 213, 241–42 (1983)). As the court explained in the order granting judgment for Teigen, the information Schubart conveyed about Naumann and her statements was sufficient to issue the apprehension request, which required only a reasonable suspicion of criminal activity. See Dkt. No. 190 at 13 (citing Alston v. City of Madison, 853 F.3d 901, 911 (7th Cir. 2017); Wis. Admin. Code §DOC 328.27(1)). Having a written version of Naumann's allegations would not have made them more or less reliable nor would it have made it more or less likely that Schubart knew or should have known whether the allegations were false.

The plaintiff similarly asserts that he was "never afforded the ability to question or cross-examine Ms. Naumann," which he suggests violated his rights under the Confrontation Clause of the Sixth Amendment. Dkt. No. 178

at 3. The plaintiff is not proceeding on a claim under the Sixth Amendment and cannot raise new claims in his response to Schubart's motion for summary judgment. See Anderson v. Donahoe, 699 F.3d 989, 998 (7th Cir. 2012). Even if he had properly raised this claim, the confrontation clause applies only to "the admission at trial of 'testimonial statements' of an absent witness" that the defendant had not previously cross-examined. Smith v. Arizona, 602 U.S. 779, 783 (2024) (citing Crawford v. Washington, 541 U.S. 36, 53–54 (2004)). The plaintiff is not challenging the use of Naumann's statements in court, and the court is not aware of any authority establishing a constitutional right to cross-examine a witness before the witness's statement is used in support of an arrest warrant or apprehension request.

The plaintiff repeatedly asserts that Schubart violated the Wisconsin Administrative Code and her job duties as a probation agent when she failed to obtain a written statement from Naumann that the plaintiff had sexually assaulted her. The plaintiff did not raise this putative claim in his complaint, and the court did not allow him to proceed on a claim related to the allegedly violated laws or policies. Even if the plaintiff had raised this issue in his complaint, a violation of an administrative code, departmental regulations or state policies—standing alone—does not violate the Constitution. See Wells v. Caudill, 967 F.3d 598, 602 (7th Cir. 2020); Estate of Simpson v. Gorbett, 863 F.3d 740, 746 (7th Cir. 2017) (citing Scott v. Edinburg, 346 F.3d 752, 760 (7th Cir. 2003)).

The court finds that although Schubart is not entitled to absolute immunity for reporting Naumann's statements to Agent Wiley and Detective Teigen, no reasonable jury could find that Schubart knowingly, intentionally or with reckless disregard for the truth conveyed false information that the plaintiff had sexually assaulted Naumann. She is entitled to judgment as a matter of law on the plaintiff's Fourth Amendment claim against her. The court will deny the plaintiff's motion for summary judgment, grant Schubart's motion for summary judgment and dismiss her from this case.[3]

## III. Conclusion

The court **DENIES** the plaintiff's motion for partial summary judgment. Dkt. No. 126.

The court **GRANTS** defendant Jennifer Schubart's motion for summary judgment. Dkt. No. 142. The court **DISMISSES** defendant Schubart.

The court will enter a separate order deciding the remaining cross-motions for summary judgment. If any claims remain after the court decides all motions for summary judgment, the court will schedule a status conference to

---

[3] Because the court has concluded that Schubart is entitled to judgment as a matter of law "'on the facts,'" the court will not address her alternative argument that she is entitled to qualified immunity. Sierra-Lopez v. County, Case No. 17-cv-1222, 2019 WL 3501540, at *10 (E.D. Wis. July 31, 2019) (quoting Viero v. Bufano, 925 F. Supp. 1374, 1387 (N.D. Ill. 1996); and citing Antepenko v. Domrois, Case No. 17-cv-1211, 2018 WL 6065347, at *6 (E.D. Wis. Nov. 20, 2018)).

discuss the next steps in this case with the remaining parties.

Dated in Milwaukee, Wisconsin this 5th day of June, 2025.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**